UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| David Oppenheimer, | ) | Civil Action No. 2:19-cv-3590-BHH |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **Opinion and Order** |
| Michael C. Scarafile, Patricia R. | ) | |
| Scarafile, Sheila Glover Romanosky, | ) | |
| O'Shaughnessy Real Estate, Inc. d/b/a | ) | |
| Carolina One Real Estate, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants Michael C. Scarafile, Patricia R. Scarafile, Sheila Glover Romanosky, and O'Shaughnessy Real Estate, Inc. doing business as Carolina One Real Estate's motion to dismiss Plaintiff David Oppenheimer's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 13.) For the reasons set forth in this Order, the motion to dismiss is denied.

## BACKGROUND

Plaintiff David Oppenheimer, who is a professional photographer, brought this copyright infringement action against Defendants Michael and Patricia Scarafile, Sheila Romanosky, and O'Shaughnessy Real Estate, Inc. doing business as Carolina One Real Estate.[1] Oppenheimer alleges that he is the author and sole owner of the original

---

[1] Hereinafter, Michael Scarafile and Patricia Scarafile are referred to collectively as "the Scarafiles." Sheila Romanosky is referred to as "Romanosky." The Scarafiles and Romanosky are referred to collectively as "the Individual Defendants." O'Shaughnessy Real Estate, Inc. doing business as Carolina One Real Estate is referred to as "Carolina One." The Individual Defendants and Carolina One are referred to collectively as "Defendants." David Oppenheimer is referred to as "Plaintiff" or "Oppenheimer."

photographs at issue in this case (the "Copyrighted Works"). The two original photographs at issue are registered under the title "Travel, Festival, and Concert Photography by David Oppenheimer 2013," bearing certificate number VAu 1-142-190, with an effective registration date of August 31, 2013. (ECF No. 1-2.) The first Work is an aerial southern-facing photograph that frames the Toler's Cove Marina in Mount Pleasant, South Carolina. (ECF No. 1-1 at 2.) The second Work is a wider aerial, southern-facing photograph that depicts Toler's Cove Marina, the Sullivan's Island Narrows, part of Sullivan's Island, and the coast of the Atlantic Ocean. (*Id.* at 3.)

Oppenheimer alleges that fewer than three years before filing the instant action, he discovered that one or more of the Defendants, or someone at their direction, infringed his copyrights by copying and distributing (or directing others to do so) the Copyrighted Works without license or authorization on more than 100 different websites—of at least 34 different realtors, agents, brokers, and/or other real estate sales entities—for the purpose of advertising and marketing a boat slip located at 0 Toler's Cove Marina 5G, in Mount Pleasant, South Carolina (the "Boat Slip"). (*See* Compl. ¶¶ 13–15, 21, 26, 48, ECF No. 1; ECF Nos. 1-3 & 1-4 (depicting allegedly infringing real estate listings and URLs).) Oppenheimer further alleges that at the time Carolina One performed the infringing acts, the Scarafiles were managing principals of Carolina One—controlling nearly all decisions of the company, Romanosky was the listing broker, and all of the Individual Defendants had a direct financial interest in the infringing activities. (*See* Compl. ¶¶ 29–30.)

On June 24, 2019, Oppenheimer's attorney sent a formal letter to Defendants identifying all of the known infringing URLs, demanding Defendants cease and desist from their ongoing infringements, and seeking information about the uses to which the

Copyrighted Works had been put and any profits resulting therefrom. (*See* ECF No. 1-5.) The complaint alleges that in October 2019, after acknowledging receipt of the cease and desist letter, while some of the infringing uses were removed, Defendants failed and/or refused to remove all instances of infringement displayed on several of the URLs. (*See* Compl. ¶ 16.) Oppenheimer further claims that in October 2019 his attorney notified Defendants that infringing uses of the Copyrighted Works were still being published on the URLs and requested that Defendants immediately remove all such instances infringement, but Defendants did not fully comply with the demand and ongoing instances of infringement continued. (*See* Compl. ¶¶ 17–18.)

Defendants filed the instant motion to dismiss on February 28, 2020. (ECF No. 13.) Plaintiff responded on November 13, 2019. (ECF No. 6.) Plaintiff filed a response on March 5, 2020. (ECF No. 18.) The matter is ripe for consideration and the Court now issues the following ruling.

## **STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

3

*Twombly*, 550 U.S. at 556)). Although the allegations in a complaint generally must be accepted as true, that principle "is inapplicable to legal conclusions," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citations and quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## DISCUSSION

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted). In their motion to dismiss, Defendants do not dispute that Oppenheimer owns a valid copyright for the Copyrighted Works or that copies of the Works were published in real estate listings for the purpose of marketing the Boat Slip. Defendants state:

4

In November 2016, Ms. Romanosky listed a boat slip for sale on Charleston Trident Association of Realtors' Multiple Listing Service for her seller client. The boat slip was located at 0 Tolers Cove, 5G in Mount Pleasant, South Carolina 29464, using two photographs of an aerial view of the Marina where the boat slip is locate [sic]. Shortly thereafter, the boat slip sold for Eighty-Five Thousand and no/100 Dollars ($85,000.00) on June 13, 2017. Ms. Romanosky and Carolina One received a combined commission of Two Thousand Five Hundred Fifty and no/100 Dollars ($2,550.00) on the transaction.

(ECF No. 13 at 1–2.) Oppenheimer's complaint raises five causes of action: (1) Non-Willful Copyright Infringement by all Defendants (Compl. ¶¶ 19–21); (2) Reckless/Willful Copyright Infringement by all Defendants (*id.* ¶¶ 22–27); (3) Vicarious Copyright Infringement by the Individual Defendants (*id.* ¶¶ 28–30); (4) Contributory Copyright Infringement by the Individual Defendants (*id.* ¶¶ 31–34); and (5) Violations of the Digital Millennium Copyright Act by all Defendants (*id.* ¶¶ 35–41). The Court will examine the legal sufficiency of the allegations supporting each cause of action in turn.

### A. Non-Willful Copyright Infringement

Defendants argue that the complaint fails to show that the Scarafiles or Carolina One are liable for non-willful copyright infringement because it does not include "plausible allegations that any of these Defendants reproduced the work, prepared derivative works, distributed copies of the work to the public, performed the work publicly, or displayed the works publicly." (ECF No. 13 at 4.) Defendants further argue that Plaintiff fails to show that Romanosky is liable for non-willful copyright infringement because Plaintiff failed to provide "plausible allegations that Ms. Romanosky copied the works in question." (*Id.* at 5.) The Court disagrees and finds that Plaintiff's allegations meet the pleading standards necessary to survive a challenge under Rule 12(b)(6).

Plaintiff alleges that he discovered the Copyrighted Works were being publicly

displayed online, without license or authorization, in advertisements for the sale of the Boat Slip. He further alleges that Carolina One (listing broker for the property), one or more of the Individual Defendants, or someone acting at their direction copied and distributed the Copyrighted Works to at least 34 different realtors, agents, brokers, and/or other entities, and that the Works were subsequently published on over 100 separate website URLs to advertise the property for sale. Plaintiff supports these allegations with "screen captures" of allegedly infringing real estate listings (ECF No. 1-3) and specific identification of the URLs displaying the Works without license (ECF No. 1-4). Plaintiff contends that after his attorney notified Defendants of their infringing acts, one or more of the Defendants removed some, but not all, of the allegedly infringing images from the accused websites, leading to the inference that Defendants exercised control over at least some of the infringements. Oppenheimer does not appear to have knowledge as to each of the named Defendants' precise role in the allegedly infringing activities, but such precise pleading is not required to state a claim that will survive a motion to dismiss. The allegations in the complaint, taken together with the supporting exhibits, provide sufficient factual content for the Court to "draw the reasonable inference that [Defendants] are liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff has stated a facially plausible claim for non-willful copyright infringement and the motion to dismiss this cause of action is denied.

### B. Reckless/Willful Copyright Infringement

Defendants next argue that Oppenheimer has failed to plausibly allege that any of the Defendants had knowledge of any infringement, or a reckless disregard and willful blindness for a copyright holder's rights. (ECF No. 13 at 5–7 (citing *Unicolors, Inc. v.*

6

*Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) ("To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal modification, quotation marks, and citation omitted))).) However, the Court finds that Plaintiff's second cause of action states a claim upon which relief can be granted.

Plaintiff's reckless/willful infringement claim is pled in the alternative to his non-willful infringement claim. (*See* Compl. ¶ 23.) In addition to the infringing actions alleged in his first cause of action, Plaintiff avers that one or more of the Defendants—or a third party acting on their behalf—saw Oppenheimer's copyright notice on the face of the images prior to downloading them for their own purposes, thus giving them "knowledge" that their acts were infringing.[2] (Compl. ¶¶ 24–26.) Plaintiff further alleges that after acknowledging the claims he made in the cease and desist letter, Defendants "falsely informed Oppenheimer that they had removed all instances of infringement from the Web," even as they continued to display the Copyrighted Works on a specific URL. (*See* Compl. ¶ 44.) The analysis need go no further. Accepting Plaintiff's allegations as true, Defendants were given formal notice that Oppenheimer was the sole author and owner of the Copyrighted Works, yet still used the Works without license or authorization. Plaintiff's second cause of action sufficiently alleges a plausible claim, in the alternative, for reckless/willful copyright infringement and the motion to dismiss this claim is denied.

---

[2] Oppenheimer states in the complaint that for many years it has been his custom and business practice to display his copyright management information ("CMI") on his copyrighted photographs when they are first published by him, and thereafter. (Compl. ¶ 12.) The CMI includes a facial watermark and embedded metadata. (*Id.*) The Copyrighted Works reflect the watermark, which includes a © notice of copyright and the designation "2013 David Oppenheimer Performance Impressions." (ECF No. 1-1 at 2–3.)

**C. Vicarious Copyright Infringement**

"Vicarious copyright liability is an 'outgrowth' of respondeat superior." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (citation omitted). However, "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Id.* (quotation marks and citations omitted). "In order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002).

The Court finds that the complaint adequately pleads a claim for vicarious copyright infringement by the Individual Defendants. Plaintiff alleges that during the time period relevant to his infringement claims: (1) Michael Scarafile was the president, director, manager, and/or other genre of principal of Carolina One; (2) Patricia Scarafile was the chief executive officer, registered agent, director, manager, and/or other genre of principal of Carolina One; and (3) Romanosky was the licensed broker for the property in question. (Compl. ¶ 29.) He further alleges that the Scarafiles "controlled nearly all decisions" of Carolina One and "provided hands-on decision making with respect to the activities" of the company. (*Id.* ¶ 30.) Moreover, he avers that Romanosky as listing broker and the Scarafiles as managing principals "had the right and ability to supervise and/or control [the] infringing conduct of [Carolina One], and/or stop the infringements once they began." (*Id.*) Defendants, in their motion to dismiss, concede that Romanosky and

Carolina One benefited financially from the sale of the Boat Slip (*see* ECF No. 13 at 2), demonstrating a financial interest for the Individual Defendants that is logically tied to the use of the Copyrighted Works to market the Boat Slip for sale. Thus, the allegations in the complaint, read in the light most favorable to Plaintiff, show that the Individual Defendants were decision-makers at Carolina One with the power to control the allegedly infringing conduct, and that they directly benefited from the profit derived in part by use of the Copyrighted Works. Plaintiff's vicarious infringement cause of action states a plausible claim for relief and the motion to dismiss the claim is denied.

### D. Contributory Copyright Infringement

"Under a theory of contributory infringement, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement, too." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (quoting *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Thus, to adequately plead a claim for contributory copyright infringement a plaintiff must show (1) there is direct infringement, and (2) the alleged contributory infringer induced, caused, or materially contributed to the direct infringement. *See id.* In the case of corporate officers or directors, such as the Individual Defendants in the instant case, courts "have interpreted this to require that the corporate officer have the right and ability to supervise the infringing activity, and a direct financial interest in such activities." *Broad. Music, Inc. v. Jeep Sales & Serv. Co.*, 747 F. Supp. 1190, 1194 n.1 (E.D. Va. 1990) (internal modification, quotation marks, and citations omitted). The mental state required to establish "knowledge" of the infringing activity on the part of the contributory infringer is satisfied by willful blindness, which is

9

recognized as "*equivalent* to actual knowledge." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018) (emphasis in original) (citing *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[P]ersons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law . . . as it is in the law generally.")).

The factual allegations that support Plaintiff's contributory copyright infringement claim against the Individual Defendants are generally similar to those that support his claim for vicarious infringement discussed above (*supra* at 8–9). The complaint states that the contributory infringement claim, count four, is made in the alternative to the first two counts of direct infringement and the third count of vicarious infringement. (Compl. ¶ 32.) Defendants do not appear to dispute that the Scarafiles are managing principals and decision-makers of Carolina One. (*See* ECF No. 13 at 9.) Instead they argue that "Carolina One's agents are independent contractors and not employees," and "Carolina One cannot control how agents choose to list their client's properties" nor does it "determine the advertisements used for listing and marketing properties; the language and photographs used are the sole discretion of the real estate agent." (*Id.* at 9–10.) With respect to Romanosky, Defendants assert she is not liable for contributory infringement "because this claim is a secondary liability claim and the Plaintiff fails to provide any plausible allegations that she knew 'of another's infringement.'" (*Id.* at 10.) Such conclusory assertions do not nullify the allegations of a well-pleaded complaint at the motion to dismiss stage.

Plaintiff alleges that Romanosky and the Scarafiles are the "dominant influences"

at Carolina One, and that all three "provide hands-on decision making with respect to the activities of the entity, set and control the company's policies and protocols, and established corporate rules and cultures which encouraged the infringing activities." (Compl. ¶ 33.) Moreover, Plaintiff avers that the Individual Defendants

> had the right and ability to supervise and/or control the infringing conduct of [Carolina One] and of its employees, agents, and/or servants and/or to stop the infringements once they began, but either directly refused to exercise such rights or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same.

(*Id.*) Additionally, Plaintiff alleges that the Individual Defendants "had an obvious and direct financial interests [sic] in the infringing activities of the company they ran." (*Id.*) Accepted as true, and taken in conjunction with Plaintiff's allegations regarding Defendant's reaction to the cease and desist letter—to wit, removing some but not all of the allegedly infringing content—Plaintiff's contributory infringement claim sets forth sufficient facts to state a claim, in the alternative, to his direct infringement and vicarious infringement claims. Accordingly, the motion to dismiss Plaintiff's fourth cause of action is denied.

### E. Violations of the Digital Millennium Copyright Act ("DMCA")

In their challenge to Plaintiff's fifth cause of action, Defendants argue that pursuant to 17 U.S.C. § 512(c), Oppenheimer's claims for violations of the DMCA should be dismissed against them because Plaintiff has not shown that Defendants can control the syndication of a database they do not own—namely, the Multiple Listing Service for the Greater Charleston Area. (*See* ECF No. 13 at 10–12.) The argument is misplaced. Defendants have not shown that they are a "service provider" as defined by 17 U.S.C. § 512(k)(1), and Plaintiff's claims do not allege facts purporting to show that Defendants

are a "service provider" within the meaning of the statute.

Under 17 U.S.C. § 512(c), "A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider . . .", if certain conditions apply. *See id.* A "service provider" is defined as "an entity offering the transmission, routing, or providing connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received," or "a provider of online services or network access, or the operator of facilities therefor." *See* 17 U.S.C. § 512(k)(1). Recognizable examples of "service providers" are common carriers such as Verizon, AT&T, Comcast, and other internet service providers. Here, neither Carolina One nor any of the Individual Defendants have shown that they are a "service provider" entitled to protection under § 512(c). Plaintiff has alleged direct acts of copyright infringement and violations of the DMCA, and this safe harbor provision of the Copyright Act has no relevance to those allegations.

The Court finds Plaintiff has properly pled that Defendants violated the DMCA, 17 U.S.C. § 1202. In general, the DMCA prohibits any person from knowingly providing or distributing copyright management information ("CMI") that is false, and from removing or altering CMI without the authority of the copyright owner or the law. *See id.* Oppenheimer alleges that he marked the Copyrighted Works with his CMI on the face of the images in legible captions just below the image (*supra* at n.2), and within the metadata of the image. (Compl. ¶¶ 36.) He further alleges that one or more of the Defendants, or a third party at

their direction, violated the DMCA by removing and/or obscuring Oppenheimer's facial and metadata CMI. (*Id.* ¶ 37.) Plaintiff attached two exhibits to the complaint showing that Oppenheimer's CMI was embedded in the metadata of his original Works but was stripped from the allegedly infringing images. (*See* ECF Nos. 1-6 & 1-7.) Oppenheimer avers that one or more of the Defendants distributed copies and/or derivatives of Oppenheimer's Works knowing that such facial and metadata CMI had been cropped-off, removed, or obscured beyond legibility, all without authorization. (Compl. ¶¶ 38–39.) Paintiff's allegations, along with the supporting exhibits, provide sufficient factual content for the Court to draw a reasonable inference that Defendants are liable for violating the DMCA.

### F. Statute of Limitations

Defendants briefly argue that Plaintiff's complaint should be dismissed because copyright infringement has a three-year statute of limitations, and that any action for infringement must be commenced within three years after the claim has accrued. (ECF No. 13 at 12 (citing 17 U.S.C. § 507(b)).) Defendants note that Romanosky listed the Boat Slip for sale in November 2016 and Plaintiff did not file this action until December 20, 2019. (*Id.* at 13.)

The Copyright Act is silent as to when a copyright claim accrues for purposes of the three-year statute of limitations, but the Fourth Circuit Court of Appeals has held that "a claim accrues when 'one has knowledge of a violation or is chargeable with such knowledge.'" *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001) (quoting *Hotaling v. Church of Jesus Christ of Latter–Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997)). Defendants have not demonstrated that Oppenheimer knew of the

alleged copyright violation, or was chargeable with such knowledge, more than three years before filing suit on December 20, 2019. The fact that Romansky listed the Boat Slip for sale in November 2016 does not mean that Oppenheimer knew of the listing or was chargeable with knowledge thereof. The motion to dismiss on this basis is denied.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) (ECF No. 13) is DENIED.

**IT IS SO ORDERED.**

<u>/s/ Bruce Howe Hendricks</u>
United States District Judge

November 16, 2020
Charleston, South Carolina