**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| David Oppenheimer, | ) | CASE NO: 2:19-cv-3590-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Michael C. Scarafile, Patricia R. Scarafile, Sheila Glover Romanosky, and O'Shaughnessy Real Estate, Inc., d/b/a Carolina One Real Estate, | ) ) ) ) | **Defendants' Memorandum of Law in Support of First Motion to Compel Exhibit # 14** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

EXHIBIT # 14

**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(CHARLESTON DIVISION)**

| | | |
|---|---|---|
| David Oppenheimer, | § | CASE NO: 2:19-cv-3590-BHH |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Michael C. Scarafile, Patricia R. Scarafile, | § | **Plaintiff's Objection and Answers to** |
| Sheila Glover Romanosky, and | § | **[Corrected] First Interrogatories** |
| O'Shaughnessy Real Estate, Inc., d/b/a | § | |
| Carolina One Real Estate, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S OBJECTIONS AND ANSWERS TO
[CORRECTED] FIRST INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, David Oppenheimer by and through his counsel of record, submits these *Plaintiff's Objections and Answers to [Corrected] First Interrogatories*. Plaintiff reserves the right to supplement or amend these Objections and Answers in accordance with Fed.R.Civ.Pro. and/or any applicable Scheduling Order of the Court.

Dated: June 16, 2021

LEJUNE LAW FIRM

By:  *s/ Dana A. LeJune*
Dana A. LeJune
Texas Bar: 12188250
NC Bar: 49025
Scott M. Francis
Texas Bar: 24088795
1225 North Loop W
Suite 825
Houston, Texas 77008
713.942.9898 Phone
713.942.9899 Facsimile

2

dlejune@triallawyers.net

NORTH CAROLINA OFFICE:
7 Orchard Street
Suite 200
Asheville, NC 28801
828-774-5800 Office

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2021, a true and correct copy of the foregoing instrument, *Plaintiff's Objections and Answers to [Corrected] First Interrogatories* was served by electronic means on all opposing counsel of record as follows:

William La Salle III, Esq. Pro Hac Vice
Stipkala & Klosowski d/b/a Thrive IP®
*WLaSalle@Thrive-IP.com*

Jeremy M. Stipkala, Esq.
Stipkala & Klosowski d/b/a Thrive IP®
*Jeremy.Stipkala@Thrive-IP.com*

/s Dana A. LeJune

## ANSWERS AND OBJECTIONS

1. Describe in detail all facts and circumstances concerning the creation of the two images [ECF 1-1, 1-2] alleged to have been infringed by Defendants.

**RESPONSE:**

On or about August 13, 2013, Oppenheimer boarded a helicopter that had both rear doors removed for the purpose of capturing aerial photographs. Oppenheimer sat in the rear of the helicopter reaching out of the open to capture photographs of the waterfront settlement by Sullivan's Island depicting both close-up and wide-angle images of the entire coastal area. To create valuable impressions, Oppenheimer was careful to capture the marina area, the intracoastal waterway and Sullivan's Island Narrows, along with the Atlantic Ocean to show its proximity to both. Oppenheimer used a handheld Nikon D4 camera with a Nikon 24 to 70 mm f 2.8 lens. Oppenheimer reserves the right to supplement this response as necessary.

2. Describe in detail all facts and circumstances concerning the Plaintiff's public display of the two images [ECF 1-1, 1-2] alleged to have been infringed by Defendants.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that is vague and ambiguous in that it seeks "all facts and circumstances concerning" the public display of the two (2) copyright-protected photographs at issue. It is Oppenheimer's understanding that this Interrogatory calls for him to identify the various websites on which Oppenheimer published the images at issue. However, in Interrogatory No. 3, Defendants request that Oppenheimer "[i]dentify all websites displaying, by Plaintiff or with permission of the Plaintiff, any or all of the images [ECF 1-1,1-2] alleged to have been infringed by Defendants." As such, Interrogatory No. 2 and Interrogatory No. 3 appear to seek the same information and are therefore unreasonably duplicative. Oppenheimer will answer this Interrogatory to the best of his knowledge and understanding of what is being asked.

Subject to and without waiver of these objections, after registering the two (2) copyright-protected photographs at issue, Oppenheimer published such photographs by uploading them to the following websites:

**Photograph No. 1**:[1]

---

[1] Per previous discussions between counsel, Oppenheimer has recognized that the first photograph provided in Oppenheimer's Complaint Exhibit 1 [ECF 1-1, p. 2] is not the same photograph as the first photograph in Oppenheimer's Complaint Exhibit 2 [ECF 1-2, p. 4] and is not the same photograph that was infringed by Defendants [ECF 1-3, p. 2]. A separate (incorrect) photograph was mistakenly included in Oppenhiemer's Complaint Exhibit 1, page 2 at the time of filing, and will be corrected through a request of

- Oppenheimer's website, performanceimpressions.com (published with Oppenheimer's copyright management information ("CMI") on the face of the image, in the caption adjacent to the image, and within the metadata)

- Flickr.com (published with Oppenheimer's CMI on the face of the image and in the caption adjacent to the image, and within the metadata)

- Live.photoshelter.com (published with Oppenheimer's CMI in the caption adjacent to the image and within the metadata).

**Photograph No. 2**:

- Oppenheimer's website, performanceimpressions.com (published with Oppenheimer's copyright management information ("CMI") on the face of the image, in the caption adjacent to the image, and within the metadata)

- Flickr.com (published with Oppenheimer's CMI on the face of the image and in the caption adjacent to the image, and within the metadata)

- Live.photoshelter.com (published with Oppenheimer's CMI in the caption adjacent to the image and within the metadata).[2]

- Facebook.com (published with Oppenheimer's CMI on the face of the image and in the caption adjacent to the image)

- Fine Art America (published with Oppenheimer's CMI in the caption adjacent to the image).

- Pixel.com (published with Oppenheimer's CMI in the caption adjacent to the image).

Although Oppenheimer cannot currently locate the two (2) photographs at issue on such websites, upon information and belief, Oppenheimer may have published one or both photographs on the following websites:

---

errata to the Court and/or through filing an amended complaint – to which Defendants have indicated they will not oppose. For the purposes of responding to the interrogatories, Oppenheimer will be referring to the ***correct photograph*** at issue that will replace the "first" photograph in Oppenheimer's current Complaint Exhibit 1.

[2] Oppenheimer has set up his account with live.photoshelter.com to dynamically generate watermarks by extrapolating the CMI contained within the metadata of the photographs uploaded therein. Unfortunately, for reasons unknown and newly discovered to Oppenheimer, this process does not always work as intended and occasionally results in some of the photographs getting published without a watermark on the face of the image (as was the case with the photographs at issue – see Oppenheimer-Scarafile000012).

Carolina One Obj Ans to Corrected 1Irogs

4

- Panoramio.com (discontinued)
- Picassa.com (discontinued)
- Google Maps
- Mobypicture.com
- Skypixel.com
- Apanation.org
- Pinterest.com
- LinkedIn
- Twitter

3. Identify all websites displaying, by Plaintiff or with permission of the Plaintiff, any or all of the images [ECF 1-1, 1-2] alleged to have been infringed by Defendants.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that is unreasonably duplicative and cumulative, and seeks information already provided in Interrogatory No. 2 above.

Subject to and without waiver of these objections, Oppenheimer refers Defendants to Oppenheimer's response to Interrogatory No. 2 above.

4. Describe in detail all measures Plaintiff employs to prevent the copying of Plaintiff's images that Plaintiff publicly displays, including on the websites identified in response to Interrogatory No. 3.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it is vague and ambiguous with regard to the use of the term "copying" – which is not defined by Defendants. As such, Oppenheimer is unsure if Defendants intend "copying" to mean all literal reproductions or the act of committing

copyright infringement as the term is understood in copyright law.[3] In responding to this interrogatory, Oppenheimer will assume that Defendants intend "copying" to mean acts of copyright infringement. Oppenheimer further objects to describing "all" measures employed to prevent copying of the images as being overbroad and seeking confidential proprietary business and/or trade secret information regarding the manner in which Oppenheimer protects his intellectual property (and by extension his photography business) which, if disclosed, could give third-parties a competitive advantage when attempting to pirate his works.

Subject to and without waiver of this objection, to prevent unauthorized copying and/or infringement of the images at issue, Oppenheimer includes his CMI on the face of the image as a "watermark," in the caption adjacent to the image, and within the metadata of the images when they are published. This CMI often includes a notice of copyright, the year the image was created and/or registered with the US Copyright Office, and the name of the author (i.e. © [year] David Oppenheimer). Oppenheimer also includes a description of the image, a link to the website www.performanceimpressions.com on most publications where the images are available for licensing. Oppenheimer also includes a notice of copyright and terms of service on the website, www.performanceimpressions.com. Oppenheimer does allow his print partner, Fine Art America, to include its own watermark on the face of the image, but ensures that Oppenheimer's CMI is visible in the caption adjacent to the image with a description of the image and link to the website www.performanceimpressions.com. Oppenheimer has recently discovered that some of his images published on Fine Art America displayed an error in which some of Oppenheimer's copyright symbols (i.e "©") were converted to a syntax error symbol. Oppenheimer has attempted to remedy this by changing the copyright symbol to the word "Copyright" to prevent Fine Art America's system from creating further errors in the display. Oppenheimer further embeds licensing, contact, and copyright information into the metadata of the images before publishing. Oppenheimer has also employed the use of some select image protection services, such as Image Rights, Pixsy, and Image Witness in order to monitor the use of his intellectual property. However, in this case, based on a diligent search of his records and to the best of his knowledge and understanding, Oppenheimer discovered the infringements through a Google search. Oppenheimer reserves the right to supplement this response as necessary.

5.    Describe in detail how Plaintiff discovered Defendants' alleged infringement.

**RESPONSE:**

On January 2, 2017, Oppenheimer discovered that the two (2) images at issue were being publicly displayed without license or authorization in order to advertise and/or market the sale of the boat slip located at 0 Tolers Cove Marina G-5, in Mount Pleasant, South Carolina on the following websites:

---

[3] Note that in copyright law, "copy" is shorthand for any infringement of the copyright owner's exclusive rights and is not limited to literal reproductions. See *Gate Rubber Co. v. Bando Chemical Industries*, 9 F.3d 823, 832 (10th Cir. 1993); *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991).

Carolina One Obj Ans to Corrected 1Irogs

- http://www.marshallwalker.com/mt-pleasant-subdivisions/marsh-harbor.html/page:2

- http://www.goldenbearrealty.com/property-ctar/16028743-g5-tolers-cove-marina-g-5-mount-pleasant-sc-29464/

Based on the information contained in these listings, Oppenheimer was able to trace the advertisements back to O'Shaughnessy Real Estate, Inc. ("CORE") (as having the real estate sales listing on the property) and Ms. Romanosky (as the licensed broker for the property). Through further investigation on the web of this listing, Oppenheimer was able to locate the other URL's containing one or both of the images at issue.

Stating further, Oppenheimer discovered the initial instances of infringement by uploading one of the images at issue (Oppenheimer cannot recall which at this time) onto Google Images' "Search by Image" function, which returned at least the two (2) URL's listed above. Oppenheimer was prompted to conduct this search in an attempt to maintain control over his intellectual property and eliminate any instances of unauthorized used.

6.   Describe in detail all of Plaintiff's actual damages due to the alleged infringement by Defendants.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it is unreasonably cumulative and duplicative, and seeks information already provided in Oppenheimer's Rule 26(a) Disclosures.

Subject to and without waiver of this objection, Oppenheimer does not have a practice of offering royalty-free licensing, as it often results in complete loss of control of the work – and loss of earning licensing fees for subsequent uses. As such, calculating what Oppenheimer would have charged for his copyrighted works to be distributed to and/or accessed by dozens or more realtors, agents, brokers, and/or other end users is difficult.

However, a one-year, nonexclusive, nation-wide license to use each of the two (2) copyright-protected aerial photographs made subject to this lawsuit for promotional purposes on a *single website* would cost approximately $3,871.00 per work. Use on additional websites and/or URLs would then be discounted at a rate of approximately 10% - 20% for each additional site. Oppenheimer reserves the right to supplement this interrogatory as needed.

7.   Describe in detail all of Plaintiff's efforts to mitigate damages due to Defendants' alleged infringement, including any take-down notices sent to any third parties other than Defendants.

**RESPONSE:**

Carolina One Obj Ans to Corrected 1Irogs

7

Oppenheimer objects to this interrogatory on the basis that it is unreasonably cumulative and duplicative, and seeks information already provided in Oppenheimer's response to Interrogatory No. 4 above.

Subject to and without waiver of this objection, in addition to included his CMI on the images when published on performanceimpressions.com and elsewhere, on or about June 24, 2019, Oppenheimer – through his attorney – sent a formal letter to Defendants identifying all of the known infringing ULRs, demanding Defendants cease and desist from all such ongoing infringements, and requesting information regarding the uses of the images. After receiving Defendants' acknowledgment of the letter, Oppenheimer noticed that the images were still being displayed on several of the identified URLs. Oppenheimer – through his attorney – notified Defendants of the ongoing infringements and prepared take-down notices to the certain websites, such as Trulia.com.  Oppenheimer also filed the instant lawsuit. Oppenheimer reserves the right to supplement this disclosure.

8.     Describe in detail all facts and circumstances tending to show that each Defendant was actually aware of the alleged infringing activity, or that each Defendants' actions were the result of reckless disregard for, or willful blindness to, Plaintiff's alleged copyrights.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it contains compound and disjunctive questions requiring Oppenheimer to describe all facts and circumstances showing each individual Defendants' actual knowledge of Oppenheimer's copyrights OR, alternatively, describing all facts and circumstances showing that each individual Defendants' actions were the result of reckless disregard for Oppenheimer's copyrights. Oppenheimer further objects to this interrogatory on the basis that it seeks information regarding Defendants' state of mind – which will not be fully known until after additional discovery is completed.

Subject to and without waiver of these objections, the undisputed evidence shows that when Oppenheimer published the two (2) images at issue, he included his CMI on the face of the images, in the caption adjacent to the images, and within the metadata of the images. Oppenheimer's facial CMI includes a "©" or the word "Copyright" in the lower right corner of the images; CMI in the caption includes a description of the images, proper notice of copyright with Oppenheimer's name and year the image was created and/or registered, as well as the website URL www.performanceimpressions.com; CMI in the metadata includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the website URL www.performanceimpressions.com.

Moreover, documents produced by Defendants bates-labeled CarolinaOne_000011-CarolinaOne_000013 show an email dated November 10, 2016 from the email address coremarketing@carolinaone.com to sromanosky@carolinaone.com attaching the second image at issue clearly displaying Oppenheimer's CMI ("© 2013 David Oppenheimer") on the face of the work. Defendants also admit that Ms. Romanosky uploaded the images at issue to the Charleston Trident Multiple Listing Service. Additionally, both images as infringed by Defendants displayed

Oppenheimer's CMI on the face of the works (although the same was often cut off and/or obscured beyond legibility when published on the various infringing URLs, for example, on www.c21charlestonrealestate.com/property/16028743/ and ssl.cdn-redfin.com/photo/151/mbpaddedwide/743/genMid.16028743_1_4.jpg). Therefore, both Core and Romanosky received notice and – had actual knowledge – that the works were copyright protected. Despite this knowledge, none of the Defendants purchased a license or received any authorization from Oppenheimer to publicly display or use either of the images at issue. Further, although Defendants have not produced any of the infringing images in native format (claiming that they no longer maintain native format images), because the images as received by Defendants contained Oppenheimer's CMI on the face of the image, they likely also contained Oppenheimer's CMI within the metadata. Again, however, as displayed on the URL's, Oppenheimer's CMI had been removed from the metadata of the infringing images.

Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have the right and ability to supervise the activities of CORE's marketing department and the agent Romanosky, yet declined to do so. Patricia Scarafile and Michael Scarafile also have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images.

Oppenheimer reserves the right to supplement this interrogatory as needed.

9.      Describe in detail all facts and circumstances tending to show each Defendant possessed an obvious and direct financial interest in the images [ECF 1-3] alleged to have infringed Plaintiff's copyrights.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it contains compound question, requiring Oppenheimer to describe in detail all facts and circumstances showing each of the four (4) Defendants' obvious and direct financial interest. Oppenheimer objects to this interrogatory on the basis that it seeks information that will not be fully known until additional discovery is completed. As such, Oppenheimer reserves the right to supplement this interrogatory.

Subject to and without waiver of this objection, the undisputed facts show that CORE's marketing department sent Romansky at least one of the images at issue (with Oppenheimer's CMI intact) and that Romanosky uploaded both of the images at issue to the Charleston Trident Multiple Listing Service for the purpose of advertising the boat slip located at 0 Tolers Cove Marina G-5, in Mount Pleasant, South Carolina.  Defendants have also already conceded that CORE and Romanosky benefited financially from the sale of the boat slip, demonstrating a direct financial interest in the infringing uses of Oppenheimer's copyright-protected images. Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of

Carolina One Obj Ans to Corrected 1Irogs

CORE, Patricia Scarafile and Michael Scarafile, respectively, have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images. Oppenheimer reserves the right to supplement this interrogatory as additional facts are uncovered.

10. Describe in detail all facts and circumstances tending to show that Defendants Michael C. Scarafile, Patricia R. Scarafile, and CORE knew of the alleged infringing activity or were willfully blind to the alleged infringing activity.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that is unreasonably cumulative and duplicative, and seeks information already provided in response to Interrogatory No. 8 above. Oppenheimer objects to this interrogatory on the basis that it contains compound and disjunctive question, requiring Oppenheimer to describe in detail all facts and circumstances showing each of three (3) separate Defendants' actual knowledge of Oppenheimer's copyrights OR, alternatively, describing all facts and circumstances showing that three (3) separate Defendants' actions were the result of reckless disregard for Oppenheimer's copyrights Oppenheimer further objects to this interrogatory on the basis that it seeks information regarding Defendants' state of mind – which will not be fully known until after additional discovery is completed.

Subject to and without waiver of these objections, the undisputed evidence shows that when Oppenheimer published the two (2) images at issue, he included his CMI on the face of the images, in the caption adjacent to the images, and within the metadata of the images. Oppenheimer's facial CMI includes a "©" or the word "Copyright" in the lower right corner of the images; CMI in the caption includes a description of the images, proper notice of copyright with Oppenheimer's name and year the image was created and/or registered, as well as the website URL www.performanceimpressions.com; CMI in the metadata includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the website URL www.performanceimpressions.com.

Moreover, documents produced by Defendants bates-labeled CarolinaOne_000011-CarolinaOne_000013 show an email dated November 10, 2016 from the email address coremarketing@carolinaone.com to sromanosky@carolinaone.com attaching the second image at issue clearly displaying Oppenheimer's CMI ("© 2013 David Oppenheimer") on the face of the work. Because the image containing Oppenheimer's CMI was sent by its marketing department, CORE received notice and – had actual knowledge – that the works were copyright protected. Despite this knowledge, CORE failed to purchase a license or received any authorization from Oppenheimer to publicly display or use either of the images at issue.

Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have the right and ability to supervise the activities of CORE's marketing department and the agent Romanosky, yet

declined to do so. Patricia Scarafile and Michael Scarafile also have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images.

Oppenheimer reserves the right to supplement this interrogatory as needed.

11.     Describe in detail all facts and circumstances tending to show that Defendants Michael C. Scarafile, Patricia R. Scarafile, and CORE had a right and ability to supervise the allegedly infringing activity.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that is unreasonably cumulative and duplicative, and seeks information already provided in response to Interrogatory Nos 8-10 above. Oppenheimer objects to this interrogatory on the basis that it contains compound question, requiring Oppenheimer to describe in detail all facts and circumstances showing each of three (3) separate Defendants' right and ability to supervise the infringing activity. Oppenheimer further objects to this interrogatory on the basis that it seeks information regarding Defendants' state of mind – which will not be fully known until after additional discovery is completed.

Subject to and without waiver of this objection, the undisputed facts show that CORE's marketing department sent Romansky at least one of the images at issue (with Oppenheimer's CMI intact) and that Romanosky uploaded both of the images at issue to the Charleston Trident Multiple Listing Service for the purpose of advertising the boat slip located at 0 Tolers Cove Marina G-5, in Mount Pleasant, South Carolina.  Defendants have also already conceded that CORE and Romanosky benefited financially from the sale of the boat slip, demonstrating a direct financial interest in the infringing uses of Oppenheimer's copyright-protected images. Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have the right and ability to supervise the activities of CORE's marketing department and the agent Romanosky. This includes, but is not limited to, the right and ability to train CORE's employees and real estate agents (including Romanosky) on copyright law, recognizing when a work is copyrighted protected, using of copyright-protected photographs (including photographs containing clear and obvious copyright notices on their faces) when advertising properties listed by CORE, and/or the need to obtain licenses when using copyright-protected photographs. Defendants admitted that they have no policies, procedures and/or protocols in place for their employees relating to copyright law.

Oppenheimer reserves the right to supplement this interrogatory as needed.

12. Describe in detail all facts and circumstances tending to show that Defendants Michael C. Scarafile and Patricia R. Scarafile had a direct financial interest in the allegedly infringing activity.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that is unreasonably cumulative and duplicative, and seeks information already provided in response to Interrogatory Nos 8-10 above. Oppenheimer objects to this interrogatory on the basis that it contains compound question, requiring Oppenheimer to describe in detail all facts and circumstances showing each of three (3) separate Defendants' financial interest in the infringing acvities. Oppenheimer further objects to this interrogatory on the basis that it seeks information regarding Defendants' state of mind – which will not be fully known until after additional discovery is completed.

Subject to and without waiver of this objection, Defendants have also already conceded that CORE and Romanosky benefited financially from the sale of the boat slip, demonstrating a direct financial interest in the infringing uses of Oppenheimer's copyright-protected images. Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images.

Oppenheimer reserves the right to supplement this interrogatory as additional facts are uncovered.

13. Describe in detail all facts and circumstances tending to show that each Defendant induced, caused, or materially contributed to the alleged infringement.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it contains compound question, requiring Oppenheimer to describe in detail all facts and circumstances showing that each of the four (4) Defendants induced, caused, or materially contributed to the infringements. Oppenheimer objects to this interrogatory on the basis that it seeks information that will not be fully known until additional discovery is completed. As such, Oppenheimer reserves the right to supplement this interrogatory.

Subject to and without waiver of this objection, the undisputed facts show that CORE's marketing department sent Romansky at least one of the images at issue (with Oppenheimer's CMI intact) and that Romanosky uploaded both of the images at issue to the Charleston Trident Multiple Listing Service for the purpose of advertising the boat slip located at 0 Tolers Cove Marina G-5, in Mount Pleasant, South Carolina.

Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have the right and ability to supervise the activities of CORE's marketing department and the agent Romanosky. This includes, but is not limited to, the right and ability to train CORE's employees and real estate agents (including Romanosky) on copyright law, recognizing when a work is copyrighted protected, using of copyright-protected photographs (including photographs containing clear and obvious copyright notices on their faces) when advertising properties listed by CORE, and/or the need to obtain licenses when using copyright-protected photographs. Defendants admitted that they have no policies, procedures and/or protocols in place for their employees relating to copyright law.

Additionally, Defendants have also already conceded that CORE and Romanosky benefited financially from the sale of the boat slip, demonstrating a direct financial interest in the infringing uses of Oppenheimer's copyright-protected images. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images.

Oppenheimer reserves the right to supplement this interrogatory as needed.

14.   Describe in detail all facts and circumstances tending to show that each Defendant intentionally removed or altered copyright management information of the Plaintiff.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it contains compound question requiring Oppenheimer to describe all facts and circumstances showing each individual Defendants' actions regard the intentional removal and/or alteration of CMI. Oppenheimer further objects to this interrogatory on the basis that it seeks information which will not be fully known until after additional discovery is completed.

Subject to and without waiver of these objections, the undisputed evidence shows that when Oppenheimer published the two (2) images at issue, he included his CMI on the face of the images, in the caption adjacent to the images, and within the metadata of the images. Oppenheimer's facial CMI includes a "©" or the word "Copyright" in the lower right corner of the images; CMI in the caption includes a description of the images, proper notice of copyright with Oppenheimer's name and year the image was created and/or registered, as well as the website URL www.performanceimpressions.com; CMI in the metadata includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the website URL www.performanceimpressions.com.

Moreover, documents produced by Defendants bates-labeled CarolinaOne_000011-CarolinaOne_000013 show an email dated November 10, 2016 from the email address coremarketing@carolinaone.com to sromanosky@carolinaone.com attaching the second image at

Carolina One Obj Ans to Corrected 1Irogs

13

issue clearly displaying Oppenheimer's CMI ("© 2013 David Oppenheimer") on the face of the work. Defendants also admit that Ms. Romanosky uploaded the images at issue to the Charleston Trident Multiple Listing Service. Although Defendants have not produced any of the infringing images in native format (claiming that they no longer maintain native format images), because the images as received by Defendants contained Oppenheimer's CMI on the face of the image, they likely also contained Oppenheimer's CMI within the metadata. However, as displayed on the URL's, Oppenheimer's CMI had been removed from the metadata of the infringing images.

Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have the right and ability to supervise the activities of CORE's marketing department and the agent Romanosky, yet declined to do so. Patricia Scarafile and Michael Scarafile also have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images.

Oppenheimer reserves the right to supplement this interrogatory as needed.

15.    Describe in detail all facts and circumstances tending to show that each Defendant knew that copyright management information of the Plaintiff had been removed or altered without authority of the Plaintiff or the law.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it contains compound question requiring Oppenheimer to describe all facts and circumstances showing each individual Defendants' knowledge regarding removal and/or alteration of CMI. Oppenheimer further objects to this interrogatory on the basis that it seeks information relating to and/or concerning each Defendants' state of mind – which will not be fully known until after additional discovery is completed.

Subject to and without waiver of these objections, the undisputed evidence shows that when Oppenheimer published the two (2) images at issue, he included his CMI on the face of the images, in the caption adjacent to the images, and within the metadata of the images. Oppenheimer's facial CMI includes a "©" or the word "Copyright" in the lower right corner of the images; CMI in the caption includes a description of the images, proper notice of copyright with Oppenheimer's name and year the image was created and/or registered, as well as the website URL www.performanceimpressions.com; CMI in the metadata includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the website URL www.performanceimpressions.com.

Moreover, documents produced by Defendants bates-labeled CarolinaOne_000011-CarolinaOne_000013 show an email dated November 10, 2016 from the email address coremarketing@carolinaone.com to sromanosky@carolinaone.com attaching the second image at

Carolina One Obj Ans to Corrected 1Irogs

issue clearly displaying Oppenheimer's CMI ("© 2013 David Oppenheimer") on the face of the work. Defendants also admit that Ms. Romanosky uploaded the images at issue to the Charleston Trident Multiple Listing Service. Although Defendants have not produced any of the infringing images in native format (claiming that they no longer maintain native format images), because the images as received by Defendants contained Oppenheimer's CMI on the face of the image, they likely also contained Oppenheimer's CMI within the metadata. However, as displayed on the URL's, Oppenheimer's CMI had been removed from the metadata of the infringing images.

Additionally, Defendants Patricia Scarafile and Michael Scarafile are the undisputed chief executive officer and president, respectively, of Defendant CORE. As the chief executive officer and president of CORE, Patricia Scarafile and Michael Scarafile, respectively, have the right and ability to supervise the activities of CORE's marketing department and the agent Romanosky, yet declined to do so. Patricia Scarafile and Michael Scarafile also have an obvious and direct financial interest in the benefit CORE received from the sale of the boat slip and, thus, the infringing uses of Oppenheimer's copyright-protected images.

Oppenheimer reserves the right to supplement this interrogatory as needed.

16.   Describe in detail all facts and circumstances tending to show that each Defendant knew or had reasonable grounds to know that allegedly altered copyright management information of the images [ECF 1-3] alleged to infringe could or would induce, enable, facilitate, or conceal an infringement of Plaintiff's alleged copyright.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it contains both compound and disjunctive question requiring Oppenheimer to describe all facts and circumstances showing each individual Defendants' knowledge – or grounds for knowledge – that removal and/or alteration of CMI could or would induce, enable, facilitate, or conceal infringement. Oppenheimer further objects to this interrogatory on the basis that it seeks information relating to and/or concerning each Defendants' state of mind – which will not be fully known until after additional discovery is completed.

Subject to and without waiver of these objections, when Oppenheimer published the two (2) images at issue, he included his CMI on the face of the images, in the caption adjacent to the images, and within the metadata of the images. Oppenheimer's facial CMI includes a "©" or the word "Copyright" in the lower right corner of the images; CMI in the caption includes a description of the images, proper notice of copyright with Oppenheimer's name and year the image was created and/or registered, as well as the website URL www.performanceimpressions.com; CMI in the metadata includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the website URL www.performanceimpressions.com.

Carolina One Obj Ans to Corrected 1Irogs

15

Moreover, documents produced by Defendants bates-labeled CarolinaOne_000011-CarolinaOne_000013 show an email dated November 10, 2016 from the email address coremarketing@carolinaone.com to sromanosky@carolinaone.com attaching the second image at issue clearly displaying Oppenheimer's CMI ("© 2013 David Oppenheimer") on the face of the work. Therefore, both Core and Romanosky received notice and – had actual knowledge – that the works were copyright protected by Oppenheimer.

On it's own website, carolinaonerealstate.com, Defendants provide a copyright notice stating "©2021 Carolina One Real Estate" and include a notice provision pursuant to the Digital Millennium Copyright Act ("DMCA"). Defendants recognize the importance of copyright law and protecting their own intellectual property. Defendants knew – or had reasonable grounds to know – authors use CMI to protect intellectual property when publishing content online. As such, Defendants knew – or had reasonable grounds to know – that if Oppenheimer was not credited as the author of the images at issue, they would be susceptible to false credit and further unauthorized uses.

Oppenheimer reserves the right to supplement this interrogatory as needed.

17.     Describe in detail all facts and circumstances tending to show that Plaintiff would or could suffer damage if the images [ECF 1-3] alleged to infringe were widely published by a real estate agent or in a real estate advertisement.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the grounds that it seeks information that was already provided in Oppenheimer Rule 26 Disclosures.

Subject to and without waiver of this objection, Oppenheimer has been making a living for over 15 years creating original and beautiful photographs, and licensing their use to businesses, non-profit organizations, and individuals for reasonable license fees. Oppenheimer's livelihood is based on the original photographs that he creates and licenses to law-abiding customers. Oppenheimer is also able to monitor and control the use of his copyright-protected works by maintaining his CMI on the face, in captions, and/or within the metadata of the images. However, when Defendants pirate his work, remove his CMI, and distribute the pirated images to multiple third-parties (whom then publish the work all over the Internet and potentially re-distribute the work to even more third-parties), his original Work becomes saturated throughout the market and Oppenheimer completely loses the ability to control the distribution and/or licensing of his intellectual property. Because his business is based entirely on licensing his works to law-abiding customers, his business suffers exponential damage when pirated copies of this works are widely distributed throughout the World Wide Web in real estate advertisements without authorization or payment. Plaintiff reserves the right to supplement this response as necessary.

18. Describe in detail the purpose of the HTML code and "Instagram Image" hyperlink which appear under "embed" and "Share" on the website performanceimpressions.com on pages soliciting the sale of the images [ECF 1-1 and 1-2] alleged to be infringed as well as other images.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that it seeks information that is not relevant to any claims or defenses, and therefore not proportional to the needs of the case. Defendants have not taken the position that they used any "share" icons from Oppenheimer's website performanceimpressions.com and therefore such icon bears no relevance to Defendants' actions nor to the subject matter at issue. Oppenheimer objects to this interrogatory as it is meant only to confuse the true issue at hand and unreasonably harass Oppenheimer.

Subject to and without waiver of this objection, Oppenheimer includes a "share to social media" icon and/or button on its website in order to promote his copyright-protected works – and by extension, his business – via select social media outlets. Like many professional photographers, Oppenheimer's business relies on promotion to solicit customers and receive revenue through lawful licensing. However, allowing lawful customers to share a page from Oppenheimer's website and photograph via a social media share icon (which credits Oppenheimer and advertises his business – is not an invitation to infringe. Social media sharing is a specific promotional tool that promotes Oppenheimer's website and forms a backlink to the original content on his website – thus providing marketing and advertising to drive customers to his website for the source content. The use of this marketing tool in no way relinquishes Oppenheimer's ownership in the copyright-protected works, nor does it authorize social media users (or anyone not specifically authorized by Oppenheimer) to download or copy the images without Oppenheimer's express authorization.

19. Describe in detail all facts and circumstances tending to show that any Defendant acquired the images [ECF 1-3] with knowledge that copyright management information had been altered, and with the intent to conceal or facilitate such alteration.

**RESPONSE:**

Oppenheimer objects to this interrogatory on the basis that is unreasonably cumulative and duplicative, and seeks the same information provided by Oppenheimer in response to Interrogatory Nos 15-16 above.

Subject to and without waiver of these objections, when Oppenheimer published the two (2) images at issue, he included his CMI on the face of the images, in the caption adjacent to the images, and within the metadata of the images. Oppenheimer's facial CMI includes a "©" or the word "Copyright" in the lower right corner of the images; CMI in the caption includes a description of the images, proper notice of copyright with Oppenheimer's name and year the image was created and/or registered, as well as the website URL www.performanceimpressions.com; CMI in the metadata includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the website URL www.performanceimpressions.com.

Moreover, documents produced by Defendants bates-labeled CarolinaOne_000011-CarolinaOne_000013 show an email dated November 10, 2016 from the email address coremarketing@carolinaone.com to sromanosky@carolinaone.com attaching the second image at issue clearly displaying Oppenheimer's CMI ("© 2013 David Oppenheimer") on the face of the work. Therefore, both Core and Romanosky received notice and – had actual knowledge – that the works were copyright protected by Oppenheimer.

On it's own website, carolinaonerealstate.com, Defendants provide a copyright notice stating "©2021 Carolina One Real Estate" and include a notice provision pursuant to the Digital Millennium Copyright Act ("DMCA"). Defendants recognize the importance of copyright law and protecting their own intellectual property. Defendants knew – or had reasonable grounds to know – authors use CMI to protect intellectual property when publishing content online. As such, Defendants knew – or had reasonable grounds to know – that if Oppenheimer was not credited as the author of the images at issue, they would be susceptible to false credit and further unauthorized uses.

Oppenheimer reserves the right to supplement this interrogatory as needed.