**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**(CHARLESTON DIVISION)**

| | | |
|---|---|---|
| David Oppenheimer, | § | CASE NO:  2:19-cv-3590-BHH |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Michael C. Scarafile, Patricia R. | § | |
| Scarafile, Sheila Glover Romanosky, | § | |
| and O'Shaughnessy Real Estate, Inc., | § | |
| d/b/a Carolina One Real Estate, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**PLAINTIFF'S EMERGENCY MOTION TO QUASH/MODIFY AND PARTIAL**
**RESPONSE TO DEFENDANTS' MOTION TO COMPEL [ECF NO. 41] SEEKING**
**PROTECTION/CLARIFICATION re DEFENDANTS' NOTICE OF DEPOSITION OF**
**PLAINTIFF AND DEFENDANTS' *SUBPOENA* TO TAKE 30(b)(6) DEPOSITION OF**
**THIRD-PARTY PERFORMANCE IMPRESSIONS, LLC**
_____

COME NOW Dana A. LeJune and Samuel K. Allen, counsel of record for Plaintiff,

David Oppenheimer ("Oppenheimer" or "Plaintiff") and counsel for third-party

Performance Impressions, LLC ("PI"), pursuant to Fed.R.Civ.P. 45(c)(3) files this

Emergency Motion to Quash or Modify, and partial response to Defendants' motion to

compel [ECF No. 41] seeking protection and/or clarification regarding Defendants' Notice

of Deposition of Oppenheimer on July 29, 2021 beginning at 9:00 am and of Defendants'

Subpoena of third-party PI to testify at a deposition on August 2, 2021 beginning at 9:00

am.

2

Prior to Defendants' filing of their Motion to Compel, Oppenheimer was in the process of completing and filing the instant brief simply as a motion to quash or modify – or otherwise seek guidance from the Court – regarding Defendants' deposition notice and *subpoena*. Upon receiving Defendants' filing, the undersigned believed it prudent to acknowledge, address, and respond to the arguments put forward by Defendants regarding the depositions.

In addition to the dispute regarding the noticed depositions, Defendants have also filed a full motion to compel requesting that the Court order Oppenheimer to produce thousands of additional documents to which Defendants believe they are entitled. See ECF No. 41, pp. 10-23. **While Oppenheimer ardently disputes Defendants' arguments regarding his responses to the written discovery, and intends to respond in full to the same, due to the immediacy of the notices of depositions and attendant document *subpoenas*, the instant brief only responds to issues concerning the depositions.**

Oppenheimer respectfully requests the Court allow Oppenheimer 14 days (as provided by D.S.C. Local Rule 7.06) to respond to the remainder of Defendants' motion to compel Oppenheimer's responses to written discovery.

## I.  Oppenheimer's Need for Emergency Court Assistance

Oppenheimer files the instant motion to quash or modify – and response to Defendants' motion to compel – with appreciation of Judge Hendricks' Scheduling Order's **requirement** to hold a telephone conference with the Court prior to filing any motions relating to discovery. See ECF Nos. 22 and 39. Despite their best efforts, both the parties and the Court are not able to conduct the teleconference with sufficient time to resolve the dispute regarding Defendants' noticed and subpoenaed depositions – which are set to begin in just two (2) days.

Prior to filing this motion/response, and pursuant to the Court's Scheduling Order, Oppenheimer notified Defendants of his objections to Defendants' intent on taking two (2) separate depositions of Mr. Oppenheimer (first in his individual capacity and second as the sole representative of non-party PI) on July 29, 2021 and August 2, 2021, respectively. See **Exhibit 1 – LeJune 7-9-21 Correspondence and Exhibit 2 – Francis 7-16-21 Meet and Confer Letter.** Unable to work out a resolution amongst counsel, the parties notified the Court of this dispute – as well as several other disputes regarding written discovery – and Judge Hendricks set a teleconference for Tuesday, July 27, 2021 at 10:00 am. See **Exhibit 3 – Email Thread with Judge Hendricks**. On Thursday, July 22, 2021, the Court informed the parties that Judge Hendricks has a conflict and recused herself, with Judge Norton taking her place – thus canceling the scheduled teleconference. **Id**.

With the subject depositions quickly approaching, on the same day as Judge Hendrick's recusal, counsel for Oppenheimer immediately reached out to counsel for Defendants to again seek an agreed procedure for upcoming depositions. See **Exhibit 4 – Francis 7-22-21 Correspondence**. But defense counsel would not budge; no compromise was offered by them, so the parties notified Judge Norton of the dispute and the need for guidance from the Court.   The discovery teleconference with Judge Norton was re-scheduled for July 27, 2021, at 2:00 pm. See **Exhibit 5 – Email Thread with Judge Norton**.

However, on Monday, July 26, 2021 – without first consulting the undersigned counsel – Defendants' counsel informed Judge Hendricks of a potential conflict.[1] See **Exhibit 5**. Although Mr. Scarafile was an intern for Judge Norton 25 years ago, the parties were informed that – out of an abundance of caution – Judge Norton would also be recusing himself. **Id**. This forced another cancelation of the (then re-scheduled) discovery teleconference. **Id**.

---

[1] Apparently, named Defendant, Michael Scarafile worked for Judge Norton in 1996 – mistakenly believing him to be a clerk (although he was actually an intern).

4

On Monday, July 26, 2021, counsel for Oppenheimer again reached out to counsel for Defendants to request an agreed postponement of the two (2) depositions until the parties and the Court could discuss these issues and resolve the dispute. On Tuesday, July 27, 2021, the undersigned was able to speak with Defendants' counsel, but (again) defense counsel refused to re-schedule the depositions, refused to compromise on the seven hours allotted, and also refused to even conduct the two (2) depositions on the same day. See **Exhibit 6 – LeJune/Stipkala 7-26-21 Email Thread**.

Because the first deposition of Mr. Oppenheimer is noticed for July 29, 2021 (just 2 days from now) – and because the parties were informed by Chambers that Judge Norton does not require a telephone conference before discovery motions are filed – Oppenheimer and PI file the instant brief both in response to Defendants' Motion [ECF No. 41], and to request emergency guidance from the Court to quash or modify Defendants' current deposition notices and the third-party *subpoena*.

Oppenheimer respectfully requests that the Court consider the instant brief (notwithstanding the requirements under the Scheduling Order [ECF Nos 22 and 39]) and grant the relief sought.

## II. Argument

1. On July 7, 2021, counsel for Defendants first informed Oppenheimer's lawyers of their intention to take two (2) separate depositions of Mr. Oppenheimer (the first on July 29, 2021 in North Charleston, SC, as an individual and plaintiff in this suit, and the second on August 2, 2021 in Asheville, NC, as a corporate representative of non-party PI).

2.  On July 9, 2021, counsel for Oppenheimer responded to Defendants' communication requesting that the parties reach an agreement on the parameters of the depositions to limit the burdens (and expenses) these two (2) depositions would necessarily cause all parties. Specifically – and as Defendants were already aware[2] - David Oppenheimer is the sole member of PI and would therefore be the only representative able to sit for the second intended deposition of the company. For this reason, Oppenheimer objected to allowing Defendants to depose Mr. Oppenheimer on two (2) separate occasions for a total of 14 deposition hours on a single lawsuit. However, the undersigned offered to present Mr. Oppenheimer for the two (2) depositions – one as an individual and the other as the representative of PI – so long as Defendants agreed to limit the time to a single day, 8 hours, saving time, travel, trouble, and expenses. (See **Exhibit 1 – LeJune 7-9-21 Correspondence**).

3.  Defendants refused this proposal – insisting on using two (2) separate full days to question Mr. Oppenheimer individually, and then as PI. On July 12, 2021, Defendants then served their *subpoena* on PI setting the second deposition of Mr. Oppenheimer (as the sole representative of PI) on August 2, 2021 at a situs 267 miles away from the first noticed deposition on July 29, 2021.

4.  On July 16, 2021, counsel for Oppenheimer again sought to reach some resolution on limiting the depositions to reduce the burdens and expenses imposed by the Defendants' settings. (See **Exhibit 2 – Francis 7-16-2021 Meet and Confer**

---

[2] As Oppenheimer clearly informed Defendants in response to Defendants' Second Set of Requests for Admissions (Defs' RFA Nos 9 and 46) on June 7, 2021)

**Letter**). To this end, counsel for Oppenheimer offered to follow the reasonable procedures set forth by many courts throughout the country (including those in the Fourth Circuit), and allow Defendants to depose Mr. Oppenheimer on July 29, 2021, in his individual capacity (but to ask any questions pertaining to PI), and stipulate that Defendants may adopt Mr. Oppenheimer's testimony as the testimony of PI. See e.g. *Nicholas v. Wyndham Int'l, Inc*., 373 F.3d 537, 543 (4th Cir. 2004). Counsel for Oppenheimer requested that Defendants provide a response to this proposal by July 21st but they never responded.

5.  The parties were prepared to discuss these issues with the Court on July 27th. However, due to the conflicts set out in Section I above, both the original and re-scheduled teleconferences were canceled.

6.  On July 22, 2021, counsel for Oppenheimer once again reached out to counsel for Defendants to re-offer the (previously ignored) proposal of allowing Defendants to adopt Mr. Oppenheimer's testimony as the testimony of PI. See **Exhibit 4**. Counsel for Oppenheimer further agreed to be flexible on time – allowing Defendants to exceed the 7-hour limitation for a single deposition so long as they would agree to ask all questions during a total of 8 hours, in a single day. See **Id**.

7.  Between Friday, July 23, 2021, and Monday, July 26, 2021, the parties were able to reach some agreements as to the geographic location[3] and exchange of exhibits, but Defendants insisted on 7 hours with the individual plaintiff, and another 7 hours

---

[3] With Defendants agreeing to conduct the depositions *via* Zoom, instead of in-person.

deposing PI. See **Exhibit 5**. Moreover, during counsels' July 27th "meet and confer" telephone call, counsel for Defendants again refused Oppenheimer's proposal to extend the hours permitted for a single deposition to allow Defendants sufficient time to ask both individual and 30(b)(6)-related questions during the July 29th deposition.

8.  Oppenheimer was hopeful that the parties could start the individual deposition on July 29th and at least attempt to complete the 30(b)(6) within the same day. **However, counsel for Defendants refused to entertain the idea of starting the 30(b)(6) deposition of PI on July 29th <u>and declined to ask any 30(b)(6)-related questions during the first-noticed deposition</u>** – again, even though Mr. Oppenheimer (as the sole representative) will clearly be available and ready to answer any such questions.

9.  Throughout all these back-and-forth discussions, Defendants have yet to articulate a single valid reason for needing 14 hours to cross-examine Mr. Oppenheimer. Even now in their Motion [ECF No. 41], Defendants fail to provide any substantive reason for needing this excessive term and degree of interrogation. Instead, Defendants irrationally claim that Oppenheimer is attempting to "escape discovery obligations" in an attempt to divert the Court's attention from the fundamental issues of relevancy, proportionality, and judicial efficiency. Nothing is further from the truth. Oppenheimer neither objects to Defendants' right to take his deposition as a party plaintiff – nor as their right to depose non-party PI. Oppenheimer has never suggested or argued that either deposition be canceled in their entirety. In fact, until

8

learning that Defendants' flat out refuse to even consider asking any 30(b)(6) questions on Thursday, July 29,[4] Oppenheimer had no issues with the time or format of the first individual deposition. However, Defendants' refusal to compromise one iota necessarily requires Mr. Oppenheimer to appear on Defendants' inflexible terms for two (2) separate full-day depositions.[5]

10. Considering the allegations and defenses set forth in this case[6] – and the 13 topics included in Defendants' *subpoena* to PI[7] - Defendants should have no issues obtaining all the information required from Mr. Oppenheimer (both as an individual and representative) within seven (7) hours of questioning. Indeed, Mr. Oppenheimer would likely be able to testify to all relevant facts at issue in this case in three (3) or four (4) hours.

11. It has now become clear that Defendants do not care about the relevant facts, the inconvenience, costs, and other expenses of the discovery they demand, or even the burden on the Court of deciding these issues. Instead, Defendants intend to use the provisions set forth under Fed. R. Civ. P. 30(b)(6) so they can unnecessarily and unreasonably subject Mr. Oppenheimer to two (2) full days of intense questioning over every minute detail of his past simply because they believe *they can*.

---

[4] Even if Mr. Oppenheimer's individual deposition only lasts a few hours.

[5] Again, note that originally, Defendants noticed the depositions days apart, nearly 300 miles apart, and only grudgingly agreed to do the depositions by Zoom when it became apparent that it could not require that participants show proof of Covid vaccinations for the in person notices…

[6] A straightforward copyright infringement and DMCA lawsuit regarding Defendants' unlicensed and unauthorized use of two (2) of Oppenheimer's copyright-protected photographs – and unauthorized removal of copyright management information ("CMI") from such Images. See ECF No. 1.

[7] Most of which really concern Mr. Oppenheimer's actions as an individual (not as the sole member of PI) and can therefore be answered by Mr. Oppenheimer's individual testimony.

12. Defendants have employed these harassing tactics since they obtained new counsel in April of 2021. Over the past two (2) months, Defendants have bombarded Oppenheimer with an onslaught of discovery requests – the majority of which appear to be aimed at keeping Mr. Oppenheimer buried under a sea of document and information gathering of **mostly irrelevant and ultimately almost entirely inadmissible material.** More specifically, since May 7th, Defendants have served two (2) sets of interrogatories (comprising 21 interrogatories), five (5) separate sets of requests for production (comprising 99 requests), and five (5) separate sets of requests for admission (comprising 128 requests).[8]

13. Additionally – and despite the determined efforts to timely respond to each and every discovery request within the barrage of discovery served – Defendants have repeatedly followed-up Oppenheimer's responses with a "deficiency" letter, containing an extensive list of all the perceived insufficiencies of the documents produced and information provided. Oppenheimer has done his very best to placate Defendants and provide reasonable, relevant responses, but such attempts have fallen short of Defendants' uncompromising and unreasonable expectations.

14. Oppenheimer has been extremely forthcoming – and provided all documents and information within his possession, custody, and/or control – relating to and/or concerning licensing, revenue, litigation, threats of litigation, and damages for the two (2) Copyrighted Works at issue. However, Defendants have insisted that

---

[8] Although Defendants have served a total of six (6) separate requests for admissions (comprising 134 requests), the first set (comprising 6 requests) was served in November of last year.

Oppenheimer is "avoiding discovery," because he has objected to producing 1) documents and information showing each and every license, revenue, threat of litigation, and total damages for thousands of unrelated photographs not at issue without limitation to time; 2) all documents and information showing each and every publication, advertising, and sale by any third-party vendor for each and every photograph in Oppenheimer's inventory (which comprises tens of thousands of works); 3) all documents and information showing total income derived (without limitation to time) by Oppenheimer for each and every photograph in his inventory; 4) all documents and information showing Oppenheimer's personal income – including state and federal tax returns; and 5) documents and information showing each and every lawsuit, claim of infringement, and confidential settlement agreement for each and every photograph ever published by Oppenheimer.

15. As Oppenheimer explained to Defendants in several written letters, locating, reviewing, organizing, and producing all the documents requested will require hundreds (if not thousands) of hours of time, and result in tens of thousands of separate documents. The broad discovery propounded by Defendants appears to be nothing more than a litigation tactic to harass, embarrass, overwhelm, discourage, and dishearten Oppenheimer on extraneous matters, which themselves are aimed at judicial and/or juror distraction.

16. Defendants' rigid position on the upcoming depositions is merely a continuation of this strategy, simply to get "two bites of the deposition apple" when questioning Mr. Oppenheimer. While Oppenheimer appreciates the concessions Defense Counsel

(was forced to) made regarding the location of the depositions, Defendants'

insistence on conducting two (2) full depositions of a single witness for potentially

14 hours of questioning subjects Mr. Oppenheimer to a level of undue burden that

significantly outweighs any potential benefit Defendants may receive. This is so

especially considering the issues at stake, the amount in controversy, and the

resources of the parties.

17. Most courts around the country are very practical when it comes to allowing a party

to get two bites at the apple under the organizational deposition rules. A common

solution to this dispute is to allow a corporate party to designate the prior testimony

of a witness as the testimony of the organization when doing so will avoid the undue

burden and expense of a duplicative deposition, while still honoring the basic

objectives of an organizational deposition. See e.g. *Novartis Pharm. Corp. v. Abbott

Labs.*, 203 F.R.D. 159, 162-63 (D.Del. 2001). "In the case of many closely held

corporations, the knowledge of an individual concerning a particular subject also

constitutes the total knowledge of the entity. In such a situation, the witness could

simply adopt the testimony that he or she provided in a former capacity, thereby

obviating the need for a second deposition." *Sabre v. First Dominion Capital, LLC*,

No. 01-cv-2145-BSJ-HBP, 2001 WL 1590544, at *2 (S.D.N.Y. Dec. 12, 2001).

18. Likewise, the Fourth Circuit has upheld denials of similar attempts by a party to

obtain two (2) depositions of the same witness when the principal of a closely held

corporation or single-member limited liability company has already been deposed,

would be the 30(b)(6) designee, and possesses all the organization's knowledge of

the subject matter. See *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

19. This pragmatic solution – successfully employed in cases throughout the country – is what Oppenheimer has proposed to Defendants and now respectfully requests the Court apply here at a rescheduled time and place agreed to by both parties.

## PRAYER FOR RELIEF

20. For the reasons stated, the undersigned prays the Court to Order that the notice to Oppenheimer and *subpoena* issued to third-party Performance Impressions, LLC by Defendants in this action be quashed pursuant to §45(c)(3) of the Federal Rules of Civil Procedure – and that they be rescheduled on a single day of testimony to last no more than 8 hours.

21. In the alternative, the undersigned prays the Court to Order that the notice and *subpoena* be modified pursuant to §45(c)(3), postponing the depositions of Mr. Oppenheimer and Performance Impressions, LLC, and rescheduled on a single day of testimony wherein Defendants may question Mr. Oppenheimer in his individual capacity and adopt Mr. Oppenheimer's testimony as the testimony of Performance Impressions, LLC where relevant and appropriate.

22. Additionally, Plaintiff respectfully requests the Court allow Oppenheimer 14 days (as provided by D.S.C. Local Rule 7.06) to respond to the remainder of Defendants' motion to compel regarding written discovery.

Dated: July 27, 2021                    Respectfully submitted,

**ALLEN LEGAL**

**By:**    /s **Samuel K. Allen**
SC Bar 68552
Federal ID No. 7744
1417 Ashley Road
Charleston, South Carolina   29407
Ofc:  843-481-4000
sam@allenlegal.net
joann@allenlegal.net

LEJUNE LAW FIRM
Dana A. LeJune
Texas Bar: 12188250
NC Bar: 49025
Scott M. Francis
Texas Bar: 24088795
1225 North Loop W
Suite 825
Houston, Texas  77008
713.942.9898 Phone
713.942.9899 Facsimile
dlejune@triallawyers.net
*Admitted Pro Hac Vice*

NORTH CAROLINA OFFICE:
7 Orchard Street
Suite 200
Asheville, NC 28801
828-774-5800 Office

Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 27th day of July, 2021, I forwarded the foregoing instrument to all opposing parties.

*s/Samuel K. Allen*
Samuel K. Allen

14