**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(CHARLESTON DIVISION)**

| | | |
|---|---|---|
| David Oppenheimer, | § | CASE NO: 2:19-cv-3590-RMG |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Michael C. Scarafile, Patricia R. Scarafile, | § | |
| Sheila Glover Romanosky, and | § | |
| O'Shaughnessy Real Estate, Inc., d/b/a | § | |
| Carolina One Real Estate, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO SEAL, OR, IN THE ALTERNATIVE, MOTION CHALLENGING CONFIDENTIALITY [ECF NO. 84]**

COME NOW Dana A. LeJune and Samuel K. Allen, counsel of record for Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff") files this Response to Defendants' Motion to Seal, or, in the alternative, Motion Challenging Confidentiality [ECF No. 84] regarding documents Plaintiff properly designated "Confidential" in accordance with the Court's Confidentiality Order [ECF No. 30].

### I. INTRODUCTION

In their motion, Michael Scarafile and Patricia Scarafile (collectively, "the Scarafiles"), Sheila Romanosky ("Romanosky"), and their company, O'Shaughnessy Real Estate, Inc. d/b/a CarolinaOne Real Estate ("CarolinaOne" or "CORE") (together "Defendants") first request that the Court – pursuant to Fed. R. Civ. P. 5.2(d) and (f) and Local Rule 5.03 – issue an order allowing them to file under seal certain documents detailing the sources and amount of Mr. Oppenheimer's

personal revenue, which have been properly designated as confidential pursuant to the Court's Confidentiality Order [ECF No. 30].

In the alternative,[1] Defendants' move the Court to reclassify the subject documents as non-confidential.

As counsel has already informed Defendants [ECF No. 84-4] – and as provided in Defendants' motion – Oppenheimer does not oppose Defendants' principal request to file the subject documents under seal. Indeed, Oppenheimer made no objection when Defendants filed the confidential documents under seal as exhibits in support of their motion for summary judgement [ECF Nos 85-19 and 85-20 filed under seal].

Oppenheimer does, however, oppose Defendants' alternative motion to re-classify these documents as non-confidential, which would allow the nature, source, and amount of Oppenheimer's personal revenue for the years 2017-2019 to become public record.

For the reasons stated below, Oppenheimer respectfully requests that the Court grant Defendants' request to file the confidential documents under seal and deny[2] Defendants' alternative motion to re-classify.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the Court's December 3, 2021 Order [ECF No. 80], Oppenheimer produced all settlement agreements, license agreements, sales records, and tax returns for the period of December 31, 2016 through December 31, 2019, as well as an itemization of his income (in both the individual and aggregate) during this same time period.

---

[1] Although submitted within the same instrument, Defendants' motion and prayer are clear their second request to re-classify the documents as non-confidential is included only in the event that the Court deny their principal motion to file under seal.

[2] Both on the merits and because such alternative request is mooted by Oppenheimer's non-opposition to their principal motion.

Because these documents reveal his sensitive information regarding his personal and business finances, Oppenheimer designated them as "Confidential-Attorneys' Eyes Only" pursuant to paragraphs 2 and 3 of the Protective Order. See ECF No. 30, ¶¶2-3. Indeed, prior to production, Defendants themselves recognized this undeniable fact and even assured Oppenheimer that the Order in place would protect Oppenheimer's sensitive personal information from public disclosure. See **Exhibit 1 (Dec. 13, 2021 Letter from LaSalle)**. Specifically, Defendants' counsel provided that "[t]o the extent confidentiality remains a concern, we remind you of the Confidentiality Order currently in place [ECF 30]. Mr. Oppenheimer can rest assured that Carolina One will strictly adhere to the terms of that Order." **Id**.

Despite this assurance, months after Oppenheimer produced the documents in full compliance with the Court's Orders,[3] Defendants' counsel tendered a meet and confer letter to discuss Oppenheimer's confidential designation of certain documents. See ECF No. 84-3. In this letter, Defendants claimed that there is a compelling public interest in the nature, source, and amount of Oppenheimer's personal revenue (in both the individual and aggregate). Id.

However, while stating this position, Defendants also proposed a compromised path forward by offering Oppenheimer three (3) options which could avoid Court-intervention.

Under the first option, Defendants proposed that either Oppenheimer agree to reclassify the subject documents as non-confidential or follow paragraph 8(c) of the Protective Order [ECF No. 30] by moving the Court for an Order confirming the confidential designation within 15 days.

In the second option, Defendants proposed that Oppenheimer agree not to contest a motion to file the subject documents as an exhibit to their motion for summary judgment under seal for the Court's consideration *in camera*. Defendants further stated that "[t]he extent to which any

---

[3] Defendants have not sought further intervention from the Court nor have they disputed the completeness of Oppenheimer's production.

3

relevant information contained therein may be shared with the jury will be resolved *in limine* prior to trial. ECF No. 84-3.

In their third and final option, Defendants proposed that Oppenheimer stipulate that proportional or percentile references to his income by generic source would not breach confidentiality under the Protective Order. Id.

Within the time requested by Defendants, Oppenheimer informed Defendants that he chose option 2 (that he would stipulate to Defendants' filing the subject documents under seal for the Court's *in-camera* inspection). See ECF No. 84-4. Oppenheimer believed this to be a fair and reasonable compromise. Under this scenario, Defendants would be entitled to use the subject documents for the Court's consideration of their summary judgment motion, but the documents would maintain Oppenheimer's confidential designation and his private financial information would be shielded from general publication.

Oppenheimer believed that the parties had reach an amicable solution and would not have to waste the Court's time with unnecessary motion practice. While their principal motion adheres to this proviso, Defendants' alternative request necessarily withdraws their own offer to compromise **after Oppenheimer had already accepted**.

Oppenheimer has continuously attempted to make compromises with Defendants and to move forward to litigate in good faith and in the interest of justice, only to find Defendants file surprise motions disregarding such efforts and falsely portraying Oppenheimer as obstreperous. Defendants continued use of gaming tactics aimed solely at harassing, intimating, and embarrassing Oppenheimer cannot continue. Oppenheimer respectfully requests that the Court put an end to Defendants' two-handed approach toward litigation and deny their (alternative) attempt to make Oppenheimer's personal financial information public.

### III. ARGUMENT

#### a. Oppenheimer Properly Designated the Subject Documents as Confidential

On January 15, 2021, the Court entered the Protective Order – drafted and stipulated by both parties – to govern how certain discovery material should be treated as confidential. See ECF No. 30, p. 2. Paragraph 2 of the Protective order provides:

> Confidential documents shall be so designated by placing or affixing the word "CONFIDENTIAL" on the document in a manner which will not interfere with the legibility of the document and which will permit complete removal of the Confidential designation. Documents shall be designated CONFIDENTIAL prior to, or contemporaneously with, the production or disclosure of the documents.

*Id*.

Paragraph 3 of the Protective Order further states that, upon review of the documents by an attorney, any party may designate documents as confidential "who has, in good faith, determined that the documents contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information." Id. at p. 3.

Under the terms of the Order, documents designated as confidential "shall not be used or disclosed by the parties or counsel for the parties or any other persons identified below (¶ 5.b) for any purposes whatsoever other than preparing for and conducting the litigation in which the documents were disclosed (including any appeal of that litigation)." See ECF No. 30, p. 2.

The subject documents reveal Oppenheimer's personal financial information in specific detail regarding his total income, an itemized breakdown by category of each source of income, as well as commercial information concerning license agreements with various non-related third-party clients. As such, prior to production, Oppenheimer designated the documents as confidential by affixing the word "CONFIDENTIAL-ATTORNEYS EYES ONLY" in large red lettering on the top each page of said documents.

5

Oppenheimer has followed the protocols of the Order. In fact, Defendants even admit that the subject documents are "properly marked 'confidential' in accordance with the current Confidentiality Order." See ECF No. 84, p. 4.

The documents are therefore appropriately subject to the Order concerning confidential information and cannot be made publicly available by Defendants or otherwise disclosed outside the provisions set forth in the Order.

### b. Oppenheimer's Personal Income is Not a Matter of Public Interest

The Protective Order protects from public disclosure documents containing "sensitive personal information, trade secrets, and confidential research, development, or commercial information." ECF No. 30, at p. 3.

In general, confidentiality involves "prevent[ing] others from making extrajudicial disclosures." 23 Charles Alan Wright et al., Federal Practices & Procedures § 5423 (1st ed. 2018). The United States Supreme Court has held that "confidential" means "private" or "secret." See *Food Marketing Institute v. Argus Leader Media*, 139 S.Ct. 2356, 2363 (2019). The Supreme Court further analyzed, "[i]n one sense, information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it." *Id* citing *e.g.*, Webster's Third New International Dictionary 476 (1961) ("known only to a limited few" or "not publicly disseminated"); Black's Law Dictionary 370 (rev. 4th ed. 1968) ("intended to be held in confidence or kept secret"). "In another sense, information might be considered confidential only if the party receiving it provides some assurance that it will remain secret." *Id*. *e.g.*, 1 Oxford Universal Dictionary Illustrated 367 (3d ed. 1961) ("spoken or written in confidence"); Webster's New World Dictionary 158 (1960) ("told in confidence"). Likewise, section 6103 of Internal Revenue Code provides that "tax returns and return information shall be

6

confidential." 26 U.S.C. § 6103(a). "Return information" includes, but is not limited to the "*nature, source, or amount of his income…*" 26 U.S.C. § 6103(b) (emphasis added).

The subject documents are confidential under all such definitions.

Oppenheimer is a private individual that owns and operates a private sole proprietary photography business, Performance Impressions, LLC. Oppenheimer is not a public figure, and his LLC is not a public company. The detailed information regarding the nature, source, and amount of Oppenheimer's income are all sensitive personal information, which he keeps private and certainly closely held.

Additionally, by stipulating to the Protective Order on file – as well as specifically promising Oppenheimer that they would adhere to the Order [see Exhibit 1] – Defendants provided assurance that the documents produced when properly designated as "Confidential" would remain outside the public view.

The subject documents are – without question – protected by confidentiality and cannot be publicly disclosed.

### c. The Court's Ability to Consider the Documents *In Camera* Renders Re-Classification Unnecessary

Defendants do not deny that the nature, source, and amount of his personal income is highly sensitive private information, and that Oppenheimer has a legitimate interest in preventing the same from becoming public information.

However, Defendants' claim that these genuine privacy concerns are somehow outweighed by the general public's interest in the specific details of this individual photographer's income.

Defendants fail to cite any statute, case, treatise, or rule to support their argument. Instead, Defendants' conclusion is based on two (2) false assumptions: (1) that Oppenheimer's income proves their affirmative defense of copyright misuse, and (2) that a compelling public interest

exists in the details of any so-called "misuser's" income – including the exact nature, source, and amount.

Both assumptions are presented without corroboration, and both assumptions are wrong.

### i. Income is Not Relevant to Copyright Misuse

First, as the Plaintiff has briefed several times before[4] [ECF Nos 51, 66, and 87-1], Oppenheimer's income is not probative of a copyright misuse defense. Copyright misuse prohibits a copyright holder from using a copyright to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant. *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990) (quoting *Morton Salt Co. v. G.S. Suppiger*, 314 U.S. 488, 492, 62 S. Ct. 402, 86 L. Ed. 363, 1942 Dec. Comm'r Pat. 733 (1942))). Copyright misuse does not prohibit a copyright holder from filing multiple lawsuits when experiencing continued piracy of his copyrighted material. Courts hold that "[t]he mere fact that [a copyright holder] has filed a significant number of lawsuits is not a valid basis on which to impute an improper purpose. Nor is the fact that many such lawsuits settle or are dismissed at an early stage necessarily suggestive of improper intent."), *Strike 3 Holdings, LLC v. Doe, 351 F.Supp.3d 160, 161-62 (D.D.C. 2018)*, citing *Frank v. Gaos* , ––– U.S. –––, 139 S. Ct. 1041, 1046, 203 L.Ed.2d 404 (2019). Neither Oppenheimer's income nor his history with the civil justice system creates a separate standard from him and other copyright owners. See *Oppenheimer v. GEI Consultants, Inc*., CN 1:21-cv-01967, *7 (N.D. Ill. Oct. 27, 2021) (rejecting defendants' argument that because Oppenheimer is a "seasoned litigator" he should have known of the subject infringements sooner, finding that such argument is "misplaced" and that "[n]othing in Copyright Laws or the Federal

---

[4] And does not wish to belabor the point here. See ECF Nos 51, 66, and 87-1.

Rules of Civil Procedure allow the Court to hold Oppenheimer to a different standard simply because he is a frequent litigator").

Defendants attempt to trick the Court into believing that Oppenheimer admitted that specific revenue numbers may support a misuse defense.

Defendants do this by cherry-picking a single sentence from Oppenheimer's *Response to Defendants' Motion for Reconsideration* [ECF No. 66] which was used in a hypothetical context to highlight a previous manipulation on the part of Defendants.

To explain: in their *Motion for Reconsideration*, in support of their argument that Oppenheimer's exact revenue numbers were necessary to support their misuse defense, Defendants misquoted language from the case *Oppenheimer v. Griffin*. Defendants argued that "Public policy supports limited rights for an 'Author' who develops and enhances ('promotes') the public knowledge, not one who exploits the public for a ***principal source of income*** obtained through coercive litigation. *See, e.g*. *Oppenheimer v. Griffin*, 2019 WL 7373784 at *7 (W.D.N.C. Dec. 31, 2019)." See ECF No. 61, p. 6 (emphasis added). However, this was not the language used in *Oppenheimer v. Griffin*. Instead, the *Griffin* court stated that "numerous filings suggest that the Plaintiff's course of conduct is to seek "copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream…." *Id*, citing *ME2 Prods, Inc. v. Ahmed*, 289 F.Supp. 3d. 760, 764 (W.D. Va 2018). Additionally, the *Griffin* opinion does not even discuss settlement revenue in the context of copyright misuse, but rather as a means of analyzing statutory damages. The *Griffin* opinion was issued from Oppenheimer's motion for default judgment – and thus the affirmative defense of misuse was never even raised, let alone dissected by Judge Redinger. See *Griffin*, 2019 WL 7373784 at*7.

9

To highlight Defendants' misleading attempts to create a non-existent standard for misuse, Oppenheimer responded by stating the following:

While Defendants' alteration may be subtle, it is misleadingly crucial.

As used by Defendants, "principal source of income" invokes the meaning of a "majority" of once's income. *Under this understanding, one could see how the specific revenue numbers may be necessary – or even relevant – to a misuse defense.* However, if Defendants merely can merely [*sic*] show that damages are ***a*** revenue stream (be it primary or secondary) exact numbers are unnecessary and irrelevant.

See ECF No. 66, p. 16.

Oppenheimer went on to explain that the *Griffin* opinion – and thus Defendants' altered quote – had nothing to do with the defense of misuse and that Defendants' argument was entirely unconnected.

Oppenheimer clearly never conceded this issue. Instead, this statement was made to show the Court how Defendants manipulated language from prior case law (used in a completely separate context) to fabricate a more favorable (yet completely false) standard for their misuse defense.

This most recent attempt to splice Oppenheimer's statements of context to create a false narrative in their favor is not worthy of this Court and should be disregarded.

    **ii.    No Public Interest in Income**

Even if Defendants could find any legal support for the theory that Oppenheimer's income makes him a copyright misuser, Defendants provide zero basis for their bald assertion that the public has a compelling interest in the specific details of Oppenheimer's personal finances.

Oppenheimer has stipulated that Defendants may file the subject documents under seal for the Court's consideration on summary judgment. Such documents have already

10

been filed and used to support Defendants' misuse defense. See ECF Nos 85, 85-19, and 85-20. While he maintains that Defendants' theory is both false and harassing, Oppenheimer looks forward to responding to the summary judgment motion and for the Court's assessment thereof.

Upon the Court's ruling, the parties can then fight over its admissibility in front of a jury at trial – as contemplated by Defendants in their meet and confer letter.

Defendants are in no way harmed or prejudiced in proceeding in this manner. Afterall, this is the procedure is Defendants proposed to Oppenheimer and which Oppenheimer accepted. Oppenheimer is in no way attempting to restrict the Court's ability to see and understand the subject documents during the adjudication of this case.

However, Defendants' attempt to make Oppenheimer's personal income a matter of public interest smacks of yet another underhanded attempt at intimidation and embarrassment. Oppenheimer prays that the Court recognize Defendants' tactics for what they are: ongoing abuse.

## CONCLUSION

For all the reasons stated above, Oppenheimer respectfully requests that the Court GRANT Defendants' Motion to Seal and DENY Defendants' alternative motion to reclassify the subject documents as non-confidential, and for such and other relief as he may be entitled.

Dated: April 18, 2022                    Respectfully submitted,

**ALLEN LEGAL**

**By:**     /s **Samuel K. Allen**
            SC Bar 68552
            Federal ID No. 7744
            1417 Ashley Road

11

        Charleston, South Carolina   29407
        Ofc:  843-481-4000
        sam@allenlegal.net

        LEJUNE LAW FIRM
        Dana A. LeJune
        Texas Bar: 12188250
        NC Bar: 49025
        Scott M. Francis
        Texas Bar: 24088795
        1225 North Loop W
        Suite 825
        Houston, Texas  77008
        713.942.9898 Phone
        713.942.9899 Facsimile
        dlejune@triallawyers.net
        *Pro Hac Vice Counsel*

        NORTH CAROLINA OFFICE:
        7 Orchard Street
        Suite 200
        Asheville, NC 28801
        828-774-5800 Office

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

       I hereby certify that on this the 18th day of April, 2022, I forwarded the foregoing instrument to all opposing parties.

        *s/Samuel K. Allen*
        Samuel K. Allen