## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## (CHARLESTON DIVISION)

| | | |
|---|---|---|
| David Oppenheimer, | ) | CASE NO: 2:19-cv-3590-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Michael C. Scarafile, Patricia R. Scarafile, | ) | **Defendants' Memorandum of Law in** |
| Sheila Glover Romanosky, and | ) | **Opposition to Plaintiff's Motion for** |
| O'Shaughnessy Real Estate, Inc., d/b/a | ) | **Partial Summary Judgment** |
| Carolina One Real Estate, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Pursuant to Fed. R. Civ. P. 56 and Loc. Civ. R. 7.05 (D.S.C.), Defendants Michael C. Scarafile, Patricia R. Scarafile, Sheila Glover Romanosky, and O'Shaughnessy Real Estate, Inc., d/b/a Carolina One Real Estate ("CORE") (collectively, "Carolina One"), by and through undersigned counsel, respectfully submit this *Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment* [ECF 87].

### INTRODUCTION

Plaintiff has not met his burden for his *Motion for Partial Summary Judgment*. ECF 87. He is not entitled to summary judgement as to direct infringement due both to his prolific invitations to share and for the several equitable reasons Carolina One raises in its several affirmative defenses. He is not entitled to sweeping summary judgment as to eleven of Carolina One's thirteen affirmative defenses. Carolina One has met its burden and, in several instances, the Plaintiff fails to offer any argument or evidence in support of his assertions. Accordingly, and for the reasons set forth below, Plaintiff's Motion should be denied.

1

## I.    Several Material Facts Asserted by Plaintiff Remain Disputed

This Section I addresses challenged evidence and facts in dispute. The relevance thereof to Plaintiff's motion for summary judgement on copyright infringement (*see* Section II) and Carolina One's defenses (*see* Section III) appears below.

### a.    The Published Images are Unregistered Derivatives of the VAu 1-142-190 Deposit Images

Although Carolina One disputes the scope of the VAu 1-142-190 Registration (*see* ECF 85-1 at 24-26), it does not challenge the Registration's presumptive validity or that Plaintiff is the owner. *Contrast* ECF 87-1 at 7-11. However, Carolina One notes that the images at issue are unregistered derivatives of those deposited with the VAu 1-142-190 Registration, and thus contain copyrightable, but currently unprotected, creative content. 17 U.S.C. §§ 101 ("derivative work") and 106(2); *see* ECF 85-7 and ECF 85-8; *contrast* ECF 1-1. Notably, "the copyright in a derivative work only protects the original elements contributed by the author of the derivative work." Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1112 (1st Cir. 1993). If this were not the case, each new derivative would unlawfully extend the life of the originating work beyond that provided by statute. *See* 17 U.S.C. § 302. For this reason, to the extent liability lies at all, such liability can only be as to that portion of the original registered content appearing in the derivative images. Carolina One cannot be held liable for the value of the derivative creative content which the Plaintiff has failed to register.

### b.    Plaintiff Misstates Evidence or Reaches Outside of the Record

The party seeking summary judgment bears the burden to show a factual assertion is undisputed. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *see* Rehkopf v. Ocwen Loan Servicing, LLC, at *3 (M.D.N.C. Nov. 2, 2016). A factual assertion must be supported with particularity by citation to the record. Fed. R. Civ. P. 56(c)(1)(A) (*c.f.*, Committee Notes on

Rules – 2010 Amendment at ¶ 10). A party asserting that a fact is not disputed must produce

admissible evidence to support that fact. *Id.* at 56(c)(1)(A) and (B). For example, a factual

assertion based on "information and belief" is insufficient for summary judgment to lie. *See, e.g.*,

Cottom v. Town of Seven Devils, 30 F. App'x 230, 234 (4th Cir. 2002) *and* Ecological Rts.

Found. v. U.S. Env't Prot. Agency, 541 F. Supp. 3d 34, 46–47 (D.D.C. 2021). Another party may

object if the offered evidence cannot be placed in an admissible form. Fed. R. Civ. P. 56(c)(2)

and 56(c)(4).

    i. *Oppenheimer's Declaration Is Not in the Record*

  The Plaintiff makes several citations to a Declaration that is not of record in this matter.

ECF 87-1 at 2, 5, and 16. By referencing a document that is not in the record, the Plaintiff taints

whatever support his assertions might have had. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring

citations to declarations that are *in the record*). These references attempt to support factual

assertions that are either foundational (*e.g.*, ECF 87-1 at 2) or fundamental to argument in which

Plaintiff contends that he should be afforded partial summary judgment (*e.g.*, ECF 87-1 at 5 and

16).

  Although a court may grant a party failing to support its assertion an opportunity to

correct the record (*see* Fed. R. Civ. P. 56(e)(1)), to do so here would unfairly prejudice Carolina

One by effectively granting Plaintiff additional time to submit a "complete" motion for summary

judgment beyond the deadline for dispositive motions that was not available to Carolina One.

*See* ECF 78. Should Plaintiff attempt to correct the record in reply to this *Opposition*, Carolina

One must be provided at least an opportunity to be heard regarding any newly-supported factual

assertions. To the extent the missing Declaration allegedly supports purported factual assertions

made by the Plaintiff, the Court should disregard those assertions in considering this Motion.

ii. *Plaintiff Misrepresents Carolina One's Discovery Production*

Carolina One made several supplemental productions to Plaintiff's RFP No. 50. Carolina One's initial production to Plaintiff's request was made on January 11, 2021, prior to retention of current counsel. *See* ECF 87-4. Carolina One's current counsel first appeared on April 5, 2021. ECF 32. On April 19, 2021, Carolina One served Plaintiff its *Revised Responses and Objections to Plaintiff's First Request for Production of Documents*. **Exhibit 1** (revised response to RFP No. 50 at 23). On April 30, 2021, Carolina One delivered its first supplemental response. **Exhibit 2** at 14. This production included the materials Plaintiff refers to (*see* ECF 87-1 at 14), which clearly support several of Carolina One's affirmative defenses. *See, e.g.*, ECF 85-26 and ECF 85-27 and Section III *infra*. On June 12, 2021, Carolina One delivered another supplemental response.

**Exhibit 3** at 12. Among other things, this production included emails evidencing Carolina One's takedown efforts on Plaintiff's behalf (CarolinaOne_12654-72), the instruction manual for the Nikon D4 camera utilized by Plaintiff to acquire the images at issue (CarolinaOne_12673-13156) (*see* ECF 41-14 at 7-8 and n. 10 *and* ECF 41-15 at 4 (*Plaintiff's Response to ROG No. 1*)), and the transcript appearing in ECF 85-21. Still further disclosures were made on June 22, 2021.

**Exhibit 4** at 12. These included Preregistration and registration of claims to copyright, CFR 609 (2013) (detailing 37 C.F.R. § 202.3 as it appeared in 2013) (CarolinaOne_13443-89) and the screenshot of the Copyright Office's Public Catalog displaying Plaintiff's various copyrights appearing at ECF 85-32. On June 28, 2021, another supplemental production followed. **Exhibit 5** at 12. This production included the document detailing Plaintiff's admission regarding his understanding of a general misconception regarding attribution; an admission which is the lynchpin of Carolina One's equitable estoppel defense. ECF 85-12; *see* ECF 85-1 at 2 and 7-15. On July 12, 2021, more supplemental production occurred. **Exhibit 6** at 12. Here, an email from

the Copyright Office refuted Plaintiff's contention that Circular 42 is applicable to events

occurring in 2016, as Circular 42 was first published in 2018. **Exhibit 7** (CarolinaOne_14455-

56); *see* Section III.c *infra*. Further disclosures were made on July 21, 2021. **Exhibit 8** at 12.

Here, Carolina One provided screenshots of Google® Earth satellite imagery virtually identical to

the two images at issue (ECF 85-2 at 47) and several references to Plaintiff's assistance in

copyright law-related matters provided to the now-retired "Photo Attorney®," which were

discussed in Plaintiff's Deposition. **Exhibit 10** (marked Exhibit # 43 for Plaintiff's Deposition);

*see generally*, ECF 85-4. July 26, 2021, even more supplemental disclosure appeared. **Exhibit 11**

at 12. This time, disclosure of several letters Plaintiff wrote to the Copyright Office addressing

proposed rulemaking, and several examples of metadata of various versions of the images at

issue *in situ* as published by the Plaintiff arrived. These communications, both individually and

in the aggregate, support several of Carolina One's pleaded defenses. The Plaintiff is not entitled

to partial summary judgment based on his claim that Carolina One's production was limited or

insufficient.

Carolina One is not required to itemize its production for Plaintiff's convenience. This is

well known as a matter of law with regard to discovery disclosure: production must be

responsive while respecting privileges such as attorney-work product. *See* GMS Indus. Supply,

Inc. v. G&S Supply, LLC, 2021 WL 2492473, at *3 (E.D. Va. May 5, 2021) (*citing* Nat 7 Union-

Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980 (4th Cir. 1992)) ("[The] RFPs are

problematic [to] the extent to which they seek a response that would disclose the mental

impressions and legal opinions of defense counsel"). Plaintiff's contention that Carolina One's

"complete[] fail[ure] to state which documents in this listing related to, concerned, evidenced,

and/or supported any of [its] affirmative defenses, and [that] they failed to indicate the manner in

5

which the documents were related" is without merit and should not be considered in support of his motion for partial summary judgment. *Contrast* ECF 87-1 at 14.

iii.  *Evidence Is Not in Admissible Form nor Capable of Being Made Admissible*

To seek summary judgment of direct copyright infringement, Plaintiff must show "copying of the original elements of the copyright." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 549 (4th Cir. 2004). Here, Plaintiff points to the alleged appearance of copied images displayed on 34 websites – "Exhibit 2" – ECF 87-3. *See* ECF 87 at 13.  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Carolina One does so object to Plaintiff's Exhibit 2. Evidence in the form of printouts from non-governmental websites may be authenticated in accordance with Fed. R. Evid. 901(b)(4) by showing "distinctive characteristics" such as dates and web addresses on the printouts, together with the testimony of a competent witness. Firehouse Restaurant Group, Inc. v. Scurmont LLC, 2011 WL 3555704, at *4-5 (D.S.C. Aug. 11, 2011). Plaintiff's Exhibit 2 [ECF 87-3] lacks any indication of the date(s) the printouts were obtained. Nor is there a single web address of a single printout appearing within Exhibit 2 [ECF 87-3]. Accordingly, it is not seen how that alleged evidence of copying can be rendered admissible at trial.

c.  Five Fact Assertions by Plaintiff Remain Disputed by Carolina One

Carolina One disputes five factual assertions made by the Plaintiff in his *Memorandum in Support of Motion for Partial Summary Judgment* [ECF 87-1]:

1. To the extent Plaintiff's contention that "copies of the Works that Defendants unlawfully reproduced contained Oppenheimer's copyright management information ('CMI')" included *embedded* CMI, this statement is disputed. *Contrast* ECF 87-1 at 4. In ¶ 12 of

the Complaint, the Plaintiff states that it is his "custom and practice to display his

copyright management information ('CMI') on his copyrighted photographs *when they*

*are first published by him, and thereafter*." ECF 1 (emphasis added). However, Plaintiff

admits that he has published both images at issue in the present case in freely-accessible

locations where facial and embedded CMI is lawfully either missing, altered, or could be

automatically changed. *See* ECF 85-1 at 33; *see also*, ECF 85-18 at 5 (*Plaintiff's*

*Response to RFA No. 112*). Whether either image at issue contained any metadata, to

include embedded CMI, at the time Ms. Romanosky acquired them, remains disputed.

Necessarily, the contention that any metadata, including embedded CMI, was altered

either before or after Ms. Romanosky uploaded them with the Toler's Cove boat listing

also remains disputed. Regardless, Plaintiff's Claim V fails for lack of evidence. *See* ECF

85-1 at 32-34.

2.  The Plaintiff has repeatedly suggested that he "traced" allegedly infringing publications

of the two images at issue through a "reverse image Google® search" rather than through

the use of paid internet image scouring services. ECF 87-1 at 3 (Plaintiff claims he

"trace[d] the advertisements back to CarolinaOne"); *see* ECF 54-4 at 9-10 (*Plaintiff's*

*Response to RFP No. 64*; associated production referring to terms of service for various

paid internet image scouring services included as **Exhibit 12**). Plaintiff provided

evidence during discovery by way of payment receipts that he was actively using the

service Image Witness at the time the Toler's Cove listing was created, and thereafter.

**Exhibit 9** (Opp-Scar 606-18). The only evidence Plaintiff offers supporting his

contention that these services were not used to locate the images at issue is his own self-

serving statements. *See* ECF 87-1 at 3; *compare* ECF 85-11 at 6-7 (*Plaintiff's Response*

*to ROG No. 4*). Although not dispositive, the Plaintiff's use of these paid resources is relevant to several of Carolina One's affirmative defenses that reference details of Plaintiff's "Bait-and-Litigate" scheme. Plaintiff's claim that those services were not used in this instance therefore remains disputed. *See, e.g.*, ECF 85-1 at 16-21.

3. Carolina One disputes Plaintiff's assertion that Carolina One "failed to provide an explanation for" instances of continuing migratory publication and that it "ceased responding to Oppenheimer's communications altogether" around October of 2019. ECF 87-1 at 4. Carolina One does not contest that it informed Plaintiff on July 1, 2019, and again on July 12, 2019, that it would seek removal of the two images at issue from the Charleston Trident Multiple Listing Service ("MLS") and other locations. Carolina One made this statement with the reasonable expectation that removal from the MLS would "trickle down" to other brokerages' websites where the listing may have migrated[1] and effect removal at those locations as well. *See* ECF 85-4 at ¶¶ 15 and 34-36; *contrast* ECF 87-1 at 3-4. Plaintiff's contention that Carolina One "failed to provide any explanation" for ongoing uses is untrue. In fact, both Carolina One's IT Director and current counsel aggressively responded with takedown requests and succeeded such that Plaintiff makes no complaint of any outstanding allegedly infringing publications. *See* ECF 41-26 at 9. These communications were made in response to Plaintiff's counsel's takedown demands and repeatedly forwarded to Plaintiff during discovery.

4. To the extent the Court considers Plaintiff's statement regarding Carolina One's alleged lack of a license, this statement is disputed. Since Plaintiff aggressively invites sharing of

---

[1] These communications are not included herein for the reasons cited by Plaintiff. ECF 87-1 at 3 (n. 2)

his images on social media and elsewhere, Carolina One denies that its use of the two images was "without license or authorization." ECF 87-1 at 5. Plaintiff's "Bait-and-Litigate" scheme is the foundation of Carolina One's several affirmative defenses, including Estoppel, Copyright Misuse, License or Otherwise Authorized Use, Failure to Mitigate, and others. *See generally* ECF 85-1 *and* Sections II and III *infra*.

5. Although Carolina One, through its membership in the Charleston Trident Association of Realtors® ("CTAR") Multiple Listing Service ("MLS") may be obligated to follow the MLS rules as Plaintiff suggests, these rules govern its relationships with the MLS and other members. *Contrast* ECF 87-1 at 5. Carolina One made no representations or warrants to Plaintiff. ECF 83 at 11; *contrast* ECF 87-1 at 5. Plaintiff's attempt to ascribe secondary liability to Carolina One in this context are both out of place and unlawful. *See* ECF 83 at 11. Carolina One has fully argued its position in this regard and does not repeat it herein. *Id.* The contents of the MLS Rules in this context are therefore irrelevant and the Court should not consider them in deciding copyright infringement liability. Carolina One further disputes the applicability of the MLS Rules to any other aspect of the relationship between itself and Plaintiff vis-à-vis the images at issue.

## II. The Plaintiff is Not Entitled to Summary Judgment as to Direct Infringement Since a Genuine Issue of Material Fact as to Authorization Remains

[T]he owner of copyright under this title has the exclusive rights to do *and to authorize* any of the following: (1) to reproduce the copyrighted work in copies[.]" 17 U.S.C. § 106 (*emphasis added*). Infringement thus requires "*unauthorized* copying." Nelson-Salabes, Inc. v. Morningside Dev. LLC, 284 F.3d 505, 513 (4th Cir. 2002) (emphasis added) (*citing* Towler v. Sayles, 76 F.3d 579, 581 (4th Cir. 1996)); *see also* ECF 87-1 at 11 (acknowledging same).

Carolina One respectfully contends that Plaintiff's actions have authorized members of the public and Carolina One to reproduce the copyrighted work and to otherwise act as alleged in this case. As such, Plaintiff is now barred from complaining of the uses and acts he invited. At least, a genuine issue of material fact remains: did Plaintiff's invitational actions and volitional omissions authorize Carolina One's alleged acts here? The evidence, and the reasonable inferences to non-movant Carolina One's advantage, preclude a finding of liability at this stage. Summary judgment in Plaintiff's favor as to direct copyright infringement cannot be granted.

Plaintiff knew back in 2012 that a prominent copyright notice was insufficient to prevent copyright infringement. At the time, he stated:



**David Oppenheimer, 28 Mar 2012 @ 6:39am**

**Copyright Infringement**

Good points and yes, I will work for less if credit is given with a link to my site.

Another point about attribution and copyright. I often hear from infringers that they left my copyright notice watermark intact on the photo. Many people have told me they thought they were entitled to commercially use my photos because they provided attribution when in fact they just committed willful copyright infringements by use my work with a prominent copyright notice.

[ reply to this | link to this | view in chronology ]

ECF 85-12 at 4; ECF 85-5 at 35:19 – 37:5. Yet from 2012 until the time of the alleged infringement, 2016, Plaintiff did nothing to effectively protect his images from copying.

In 2016, Plaintiff displayed the two images at issue on the internet often with nothing more than textual notices of copyright.  ECF 85-5 at 38:11 – 56:12, 61:13 – 64:15, 114:9 – 119:20, 127:13 – 130:7, and 143:7 – 150:5; ECF 85-6 at 177:22 – 179:1; and ECF 85-11 at 5 (*Plaintiff's Supplemental Response to ROG No. 2* (at n. 2)) and 18-19 (*Plaintiff's Supplemental Response to ROG No. 18*). Those publications, in particular on Plaintiff's own website, did not use commonly employed infringement prevention measures such as the use of removable watermarks, "right-click" copy protection, or pay-to-acquire services typically referred to as

"paywalls." See *ECF* 85-5 at 38:11 – 56:12 and 61:13 – 64:15; ECF 85-6 at 177:22 – 179:1; and

ECF 85-11 at 18-19 (*Plaintiff's Supplemental Response to ROG No. 18*). Copyright notices

appeared on some of the online-displayed versions of his two photographs at issue, as a

"watermark" on the image itself. ECF 85-5 at 44:1-10. "Share buttons," inviting the re-posting of

his images to social media, accompanied Plaintiff's images displayed on his own website since

2014. ECF 85-5 at 63:6 – 14; 90:1 – 92:3; 98:10 – 18; 103:14 – 114:3 and 127:12 – 137:5; ECF

85-6 at 47:6 – 50:15, 52:7 - 14, 69:3 – 80:23, 88:13 – 101:3, and 154:2 – 164:4; ECF 85-15 at

10-13 (*Plaintiff's Supp. Response to RFA Nos. 20 and 22- 25*); ECF 85-25; ECF 85-26 at 2, 4,

and 7; and ECF 85-27 at 2-3, 7, 11-12, 15, and 18-19. Plaintiff even includes HTML computer

code that allows another to display his images on other websites. ECF 85-5 at 103:14 – 114:3

and ECF 85-27 at 2-3 and 7. That HTML code can be accessed by engaging the following

feature appearing with an image at issue in the present case:

Embed

`<a href='https://fineartamerica.com/featured`

Preview

ECF 85-27 at 3. Embedding that HTML code operates *to display Plaintiff's image on virtually*

*any website across the internet*. ECF 85-5 at 93:12-96:4. At his deposition, Plaintiff walked

through demonstrations showing how easy it is to copy, download, and share his images. ECF

85-5 at 114:9 – 119:20 (OPP5960) and ECF 85-6 at 159:17 – 172:3 (OPP5964).

　　Significantly, Plaintiff does not employ commonly-used technological obstacles to hinder

copyright infringement. Adding watermarks across the face of the images would detract from the

photographs and be "a lot of work." ECF 85-5 at 54:11-24 and 52:21 – 56:5. He does not publish

his images behind a paywall. ECF 85-6 at 178:24 – 179:1. Besides a copyright notice in most

instances, no textual warnings against copying appeared in close proximity to his published

images. ECF 85-5 at 61:13 – 64:15 and ECF 85-11 at 18-19 (*Plaintiff's Supplemental Response to ROG No. 18*); *see* ECF 85-8; ECF 85-26; ECF 85-27; and ECF 85-28. Plaintiff's website did not include "terms of service" until 2020. ECF 85-5 at 57:18 - 58:13.

It remains a question for the jury whether Plaintiff's acts and omissions amount to authorization within the meaning of 17 U.S.C. § 106. On the foregoing evidence, a reasonable jury could decide that question in Carolina One's favor. Thus, summary judgment on direct copyright infringement is not possible.

**III.     Carolina One Meets its Burden as to its Several Pleaded Affirmative Defenses**

Carolina One meets its burden, or Plaintiff fails to meet his burden, regarding several of Carolina One's affirmative defenses. Accordingly, Plaintiff is precluded from summary judgment as to those defenses. Carolina One has pleaded thirteen defenses [ECF 20], from which Plaintiff seeks summary judgment as to eleven [ECF 87]. Several of Carolina One's affirmative defenses are addressed below.

a.     Use of the Images in the Toler's Cove Listing was Fair Use

The defense of Fair Use may stand even in a commercial context and even where the use is substantially similar. Carolina One's purpose in using the images differs from the Plaintiff's. The Plaintiff is a photographer whose images are created, licensed, or sold for their inherent artistic value. Carolina One used the images, albeit in a commercial setting, not for their artistic value but for the information the images communicated to viewers. Furthermore, Plaintiff has not been harmed by Carolina One's use: he never licensed or sold either of the images at issue, indicating a small or non-existent market for them.

Fair Use is a mixed question of law and fact. Brammer v. Violent Hues Prods., LLC, 922 F.3d 255, 261 (4th Cir. 2019) (*citing* Bouchat v. Balt. Ravens Ltd. P'ship, 619 F.3d 301, 307 (4th Cir. 2010) ("Bouchat IV"). None of the fair use factors are exclusive. Sundeman v. Seajay Soc'y,

Inc., 142 F.3d 194, 202 (4th Cir. 1998). A court weighs these factors "together, in light of the purpose of copyright." Brammer, 922 F.3d at 262 (*citing* Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994)). Fair use "advance[s] copyright's purpose of 'promoting the Progress of Science and useful Arts.'" *Id.* (*citing* U.S. Const. art. 1, § 8, cl. 8). The elements of fair use include: (1) the purpose and character of use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the *copyrighted work as a whole*; and (4) the effect of the use upon the potential market or value of the work. 17 U.S.C. § 107 (*emphasis added*).

Purpose and Character. Carolina One's use was informational in nature and therefore transformative. A use is transformative when it "communicates something new and different from the original or [otherwise] expands its utility." Brammer, 922 F.3d at 262 (*citing* Fox News Network, LLC v. Tveyes, Inc., 883 F.3d 169, 176 (2d Cir. 2018)). Commercial use of copyrighted works that have an entirely different function and purpose than the original works are transformative, even if there is no substantial alteration. A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 638 (4th Cir. 2009). Plaintiff "makes his photographic works available for perusal and licensing." ECF 1 at ¶ 9. Ms. Romanosky used the images to communicate information relevant to the geography surrounding Toler's Cove. ECF 85-2 at ¶ 45. Carolina One's real estate sales do not compete or interfere with Plaintiff or Performance Impression, LLC's image sale or licensing activities. *Id* at ¶¶ 21-31 and ECF 85-3 at ¶¶ 11-22. Because Carolina One's use was transformative, this factor favors a finding of fair use. *Contrast* ECF 87-1 at 15-16.

Nature of the Work. Carolina One does not contest photographs are generally copyrightable, even where they are largely factual. ECF 87-1 (*citing* Burrow-Giles Lithographic

Co. v. Sarony, 111 U.S. 53 (1884)). However, copyright law does not extend to the depiction of natural elements. Southgate v. Facebook, Inc., 2017 WL 6759867 at *2 (E.D.V.A. Nov. 14, 2017). The images at issue are virtually identical to generally-available stock images, satellite photography, or drone photography. *See* ECF 85-2 at ¶¶ 38.c and 57, ECF 85-3 at ¶¶ 21-22, *and* ECF 85-11 at 4 (*Plaintiff's Response to ROG No. 1*). Despite Plaintiff's contention that his works were "captured at a precise moment with a great degree of care and difficulty" and that he "made innumerable creative choices in capturing" details in each image, the nature of the images does not weigh in his favor as he claims. *Contrast* ECF 87-1 at 16-17.

  <u>Amount and Substantiality of the Portion Used</u>. Although Plaintiff gives this element short shrift, the amount and substantiality of the portion used is significant in light of the scope of the overall work. *Contrast* ECF 87-1 at 17. There are two significant reasons why the amount and substantiality of the portion used is nominal in light of the scope of the overall work: VAu 1-142-190 is a single work comprising 7,914 unpublished images in a collection, and the published derivative versions of the images are themselves unregistered.

  Copyright Registration VAu 1-142-190 covers a single work comprising an unpublished collection of 7,914 images. ECF 85-1 at 24-26; *see* ECF 85-33. Assuming, *arguendo*, that the deposit versions of OPP5960 and OPP5964 were duplicated without permission in their entirety, this would still represent a miniscule 0.025% use when compared to the work in its entirety. *See* ECF 85-33. However, actual use in this instance is even less, since the images at issue are the published versions of the deposit images. *Compare* ECF 1-1 and ECF 85-6 at 2 and 6. The edited, published versions are derivative of the unpublished deposit images. *See* Section I.a *supra*. As this editing includes cropping, some, but not all, of the creative content of the deposit originals appear in the published derivatives. *Compare* ECF 1-1 and ECF 85-6 at 2 and 6.

Therefore, while 100% of the *derivative* published images were used in the Toler's Cove listing, each of the derivative images uses less than the entirety of the deposit unpublished images. *Id*. Considering the amount and substantiality of the portion of both the work as a whole, and as to each registered image used, this factor weighs heavily towards a finding of fair use. *Contrast* ECF 87-1 at 17.

Effect on Plaintiff's Market. This "is undoubtedly the single most important element of fair use." Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 566 (1985); *see* Oppenheimer v. ACL LLC, 504 F. Supp. 3d 503, 511 (W.D.N.C. 2020). A copyright holder must show actual market harm. 17 U.S.C. § 107(4); Bouchat IV, 619 F.3d at 315. The deposit images are, and remain, unpublished. *See* ECF 87-1 at 2 (wherein the images at issue are identified as "as Published"). The value of the deposited images in comparison to the published derivative versions is therefore necessarily nominal. Ultimately, however, the value of the published images is similarly nominal – Plaintiff admits he has never either sold or licensed either one (ECF 85-15 at 25 (*Plaintiff's Response to RFA No. 61*)), and a significant source of income is litigation and threats of litigation. ECF 85-1 at 21 (*see* ECF 85-19 (*filed under seal*) and ECF 85-20 (*filed under seal*)). Here, again, Carolina One's real estate sales do not compete or interfere with Plaintiff or Performance Impression, LLC's image sale or licensing activities. *Id* at ¶¶ 21-31 and ECF 85-3 at ¶¶ 11-22. Furthermore, "[b]orrowing from the Fourth Circuit, no one would buy a boat slip just to look at photographs of the marina." ECF 83 at 7. This "single most important element" therefore weighs toward a finding of fair use.

Notably, in similar circumstances, summary judgment in favor of Plaintiff on another defendant's Fair Use defense was precluded. ACL LLC, 504 F. Supp. 3d at 511.

b. <u>Failure to State a Claim</u>

Carolina One is entitled to summary judgment at least as to Count V, as Plaintiff cannot overcome the evidentiary hurdles necessary to substantiate that claim. ECF 85-1 at 32-34. Further, Plaintiff fails to address Carolina One's pleaded defense of Failure to State a Claim in his Motion for Partial Summary Judgment [ECF 87-1]. A claim may be dismissed if the facts will not support a Plaintiff's claim for relief. <u>Lambeth v. Bd. Of Commissioners Of Davidson Cty., NC</u>, 407 F.3d 266, 268 (4th Cir. 2005) (*citing* <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957)). Evidence of intent or knowledge is mandatory for proving a violation of the Digital Millennium Copyright Act ("DMCA"), the heart of Plaintiff's Count V. *See* <u>Mango v. Buzzfeed, Inc.</u>, 970 F.3d 167, 172-74 (2nd Cir. 2020), <u>Victor Elias Photography, LLC v. Ice Portal, Inc.</u>, 2021 WL 2384618, at *3–5 (S.D. Fla. May 3, 2021), *and* <u>GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC</u>, 391 F. Supp. 3d 828, 840-42 (N.D. Ill. 2019).

Here, Plaintiff cannot meet the knowledge or intent requirements inherent in any of three violations of the DMCA set forth in 17 U.S.C. § 1203(b): (1) intentional removal of CMI; (2) distribution or importation knowing CMI was removed without authority of the owner or the law; *or* (3) distribution or importation knowing CMI had or would be removed and knowing that such removal would induce an infringement. *See* ECF 85-1 at 32-34. First, the existence of embedded CMI in the images as acquired by Ms. Romanosky is contested. *See* Section I.c.1. *supra*. Second, "neither image at issue was cropped prior to deposit in the MLS database, since both images appear with facial CMI intact following migration from the MLS. *See* ECF 1-3; ECF 67 at 12-13; *and* ECF 81 at 22:21 – 24:23. Third, images may be automatically cropped or "optimized" for lawful purposes that do not violate the DMCA. <u>Stevens v. Corelogic, Inc</u>., 899 F.3d 666, 671-76 (9th Cir. 2018). Fourth, Ms. Romanosky did not have the technical acumen

necessary to remove embedded metadata, whether CMI or not. ECF 85-2 at ¶¶ 13, 14, 17, and 18. Therefore, there is no evidence that facial or embedded CMI was intentionally or knowingly removed, or that any such removal would intentionally or knowingly induce an infringement. Plaintiff thus is not entitled to summary judgment as to Carolina One's affirmative defense of Failure to State a Claim, since he is not entitled to relief as to Count V.

      c.  <u>Unclean Hands</u>

Plaintiff is not entitled to summary judgment as to Carolina One's Unclean Hands defense. "He who comes into equity must come with clean hands." <u>Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.</u>, 324 U.S. 806, 814–15 (1945). Equity requires that a Plaintiff acts fairly, without fraud or deceit. *Id*. A Plaintiff is not entitled to profit from his own dereliction. *See* <u>Tempo Music, Inc. v. Myers</u>, 407 F.2d 503, 507–08 (4th Cir. 1969) (citations omitted).

Plaintiff addresses both unclean hands and copyright misuse together. ECF 87-1 at 20-24. As Carolina One notes, however, while copyright misuse "has its historical roots in the unclean hands defense," in this instance the Plaintiff's unclean hands relates to his own conduct in this matter, and copyright misuse relates to how his use of copyright law affects society. ECF 85-1 at 16. The two defenses are independent. Plaintiff fails to address the alleged inadequacy of Carolina One's unclean hands defense; Carolina One supports both unclean hands and copyright misuse as affirmative defenses in its own Motion. ECF 85-1 at 16-22 and 26-32; *contrast* ECF 87-1 at 20-24. Plaintiff is not entitled to summary judgment as to either defense.

Carolina One highlights several examples of Plaintiff's unclean hands throughout the record. Twice Plaintiff presented a truncated two-page copy of Copyright Certificate of Registration VAu 1-142-190 in this case, with a Yellow Sticky Note obscuring pagination information. *See* ECF 1-2 at 2-3 and ECF 85-29. Then Plaintiff's counsel falsely stated that

Certificate did not recite the material words, "unpublished collection." ECF 41-27 at 3 & n. 2. He further unfairly pleaded "(at least) 100 separate URLs" are potentially at issue, when he knew or should have known that 41 of those "separate" URLs were duplicative. *Compare* ECF 1 at ¶¶13-14 and ECF 1-4 with ECF 85-14. Those acts are material, since they inflate Carolina One's apparent exposure to liability. ECF 85-1 at 29-30. Plaintiff's argument that his registration covers two works instead of one misrepresents the scope of his copyright by raising Carolina One's apparent exposure by $150,000. ECF 85-1 at 28. Plaintiff's duplicity regarding the URLs is made worse since Plaintiff had recently apologized to another court for overstating the number of websites on which alleged DMCA violations appeared. *See* ECF 85-21 at 29:10-17 (Bates No. CarolinaOne_013202) (Oppenheimer v. Griffin, No. 1:18-cv-272-MR Dkt. 23 (March 3, 2020, W.D.N.C.)). "As Professor Nimmer has written, . . . 'the defense [of unclean hands] has been recognized when plaintiff misused the process of the courts by **falsifying a court order or evidence, or by misrepresenting the scope of his copyright to the court and opposing party**.'" Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 990–91 (9th Cir. 2009) (*emphasis added*) (*quoting* 4 Nimmer on Copyright § 13.09[B]). Since his unclean hands preclude all counts of the Complaint [ECF 1], Plaintiff is not entitled to summary judgment as to this affirmative defense.

d.  Estoppel

Plaintiff is not entitled to summary judgment as to Carolina One's Estoppel defense. Plaintiff's "Bait and Litigate" conduct vis-à-vis Carolina One's alleged acts leading to this litigation support summary judgment for Carolina One as to Estoppel. *See* ECF 85-1 at 7-15. Plaintiff contends the Estoppel defense requires he must "either intend his own conduct to be relied upon or acted so the party asserting the estoppel believed it was so intended." ECF 87-1 at

25 (*quoting* <u>Lottie Joplin Thomas Trust v. Crown Publishers, Inc.</u>, 456 F.Supp 531 (S.D.N.Y.

1977)). Estoppel stands under that general articulation and under the more comprehensive

articulation found in the precedent of the Fourth Circuit.

"[W]hen a copyright owner engages in intentionally misleading representations

concerning his abstention from suit, and the alleged infringer detrimentally relies on the

copyright owner's deception, the doctrine of estoppel may bar the copyright owner's claims

completely, eliminating all potential remedies." <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 572

U.S. 663, 684 (2014) (*citing* 6 Patry § 20:58, at 20-110 to 20-112). In order to establish estoppel

as an affirmative defense: (1) the plaintiff must have actual or constructive knowledge of the

truth of a matter; (2) he must have misrepresented or concealed material facts to the defendant;

(3) that must have intended or expected the defendant to rely upon those misrepresentations or

concealments; (4) the defendant did so act; and (5) that defendant's reliance must be both

reasonable and detrimental. <u>Tavoy v. NTP, Inc.</u>, 495 F.Supp.2d 531, 537 (E.D.Va 2007) (*citing*

<u>Elmore v. Cone Mills Corp.</u>, 187 F.3d 442, 446–47 (4th Cir. 1999) (*per curiam*)).

First, Plaintiff knew of and exploited a commonly held misbelief suggesting that

attribution was sufficient to substitute for permission, and that a "prominent copyright notice"

would not deter infringement. ECF 85-12 at 4. Second, the Plaintiff concealed that he would sue

anyone who took up his offer to "share," suggesting that such invitations were both nonexclusive

and perpetual. *See* ECF 85-1 at 8-11. Broadly, Plaintiff's search engine optimization; ease of

copying and downloading; invitations to share; and failure to employ technical obstacles, textual

warnings, and indicia that payment is needed before use of images all together operated to

conceal from Ms. Romanosky that copying, even with attribution, would constitute infringement

and Plaintiff would sue her for it. *See* Section II *supra*, and the evidence cited therein; *see also*

ECF 85-1 at 8-11. Third, the Plaintiff not only expected but intended that real estate agents, such as Ms. Romanosky, would rely on his invitation and concealment and use the images without seeking express permission. *See, e.g.,* ECF 85-21 at 31:20 (Bates No. CarolinaOne_013204) – 32:24; *see generally* ECF 85-1 at 11-12. Fourth, Ms. Romanosky did act on Plaintiff's invitation: his efforts at search engine optimization prioritized his images in a Google® search conducted by Ms. Romanosky wherein she discovered and acquired the images. ECF 85-1 at 12-13; *see* ECF 85-2 at ¶¶ 33, 45-46, and 50. Finally, Ms. Romanosky's reliance was both reasonable and detrimental: she acted not only in accordance with the Realtor® Code of Ethics but Plaintiff's own prior experiences with real estate agents. ECF 85-1 at 13-15; ECF 85-2 at ¶¶ 10 and 45.h and Exhibit A (25) and Exhibit B (36) (Standard of Practice 12-10(4); ECF 85-12 at 4; *and* ECF 85-21 at 32:15 (Bates No. CarolinaOne_013205) – 33:9). And her actions were detrimental. ECF 85-2 at ¶ 12. Plaintiff is therefore not entitled to summary judgment as to Carolina One's pleaded Estoppel defense.

      e.  <u>Acquiescence</u>

Plaintiff is not entitled to summary judgment as to the Acquiescence defense as he fails to provide substantive reasons in support. He notably simultaneously asks for summary judgment as to estoppel, waiver, abandonment, and acquiescence, but only provides argument as to estoppel. ECF 87-1 at 24-25. Carolina One is further able to meet its burden in establishing its acquiescence defense.

Acquiescence of a defendant's acts may estop plaintiff's copyright assertions. <u>Soc. Sci. Hist. Ass'n v. Duke Univ.</u>, 31 F. Supp. 3d 781, 788 (n.1) (E.D.N.C. 2014). Acquiescence can be established through conduct which assures a defendant the contemplated activity is acceptable to

the plaintiff. <u>Sweetheart Plastics, Inc. v. Detroit Forming, Inc.</u>, 743 F.2d 1039, 1046 (4th Cir. 1984). This conduct may be express or implied and may be inferred. *Id.*

Plaintiff demonstrates acquiescence in his expectation that a real estate agent like Ms. Romanosky would rely on his concealment of the danger of copying his images. *See* ECF 85-12 at 4 (Plaintiff acknowledges prevalent misconception regarding attribution); ECF 85-22, ECF 85-26 at 2-5 and 9, *and* ECF 85-27 at 2-4, 7-8, and 15-16 (Plaintiff embeds real estate-focused keywords to his images); *and* ECF 85-21 at ECF 85-21 at 32:15 (Bates No. CarolinaOne_013205) – 33:9) (Plaintiff had knowledge that his search engine optimization was particularly effective at enticing real estate agents). His use of search engine optimization add a flavor of intentionality to Plaintiff's expectation. *See* ECF 85-21 at 32:15 (Bates No. CarolinaOne_013205) – 33:9. Furthermore, "[i]t is beyond question that if a person browsing the internet used Plaintiff's share buttons and reposted his images" to social media, "such a person could reasonably assume Plaintiff would forgo suing that person[.]" *See* ECF 85-1 at 13-14. By providing HTML code allowing for further sharing (embedding) beyond social media, this reasonable assumption extends to publications elsewhere on the internet. *See* ECF 85-5 at 93:12 – 96:4 and 103:14 – 114:3; and ECF 85-27 at 2-3 and 7. As a reasonable juror could determine Plaintiff acquiesced to Carolina One's use of the images at issue, he is not entitled to summary judgment as to this defense.

f.  <u>Copyright Misuse</u>

Plaintiff is not entitled to summary judgment as to Carolina One's Copyright Misuse defense. Plaintiff's conduct both generally and during this litigation support a finding for Carolina One as to Copyright Misuse. *See generally*, ECF 85-1 at 16-24. Plaintiff reaches outside of the Fourth Circuit, citing case law which does little to inform established Fourth Circuit

precedent. *Contrast* ECF 87-1 at 20-21 (*citing* <u>Soc'y of Holy Transfiguration Monastery, Inc. v.</u> <u>Gregory</u>, 689 F.3d 29, 65 (1st Cir. 2012)). In our circuit, Copyright Misuse "applies when the copyright is used 'in a manner violative of the public policy embodied in the grant of a copyright.'" <u>Thomas M. Gilbert Architects, P.C. v. Accent Builders & Devs., LLC</u>, 629 F. Supp. 2d 526, 535 (E.D. Va. 2008), *aff'd sub nom.* <u>Thomas M. Gilbert Architects, P.C. v. Accent</u> <u>Builders And Devs.</u>, LLC, 377 F. App'x 303 (4th Cir. 2010) (*citing* <u>Lasercomb Am., Inc. v.</u> <u>Reynolds</u>, 911 F.2d 970, 978 (4th Cir.1990)).

Plaintiff's exploitation of the "Potemkin Village[2]" where his "Bait-and-Litigate" scheme lives is itself against public policy. *See* ECF 85-1 at 16-24. Carolina One goes beyond merely the inequity of exploiting the judiciary, however, and identifies how Plaintiff's scheme is anticompetitive in the context of the fair market: real estate photographers, drone photography operators, and others who provide suitable real estate photography to real estate agents like Ms. Romanosky are harmed by Plaintiff's scheme since it skews the competitive process unfairly in the Plaintiff's favor. *See* ECF 85-1 at 23; *see also,* ECF 85-2 at ¶¶ 38, 43-46, and 57 and ECF 85-3 at ¶¶ 21-22. For instance, through Plaintiff's extensive use of search engine optimization, real estate agents are more likely to find and choose his images than purchase Mr. Ellis' Alamy® Stock Photo EJ188A. *See* ECF 85-2 at Exhibit K (72); *see also* ECF 85-2 at Exhibit F (49) and ECF 85-3 at Exhibit F (52-53). Nor would they exert the effort to seek equivalent satellite images available from sources such as Google® Earth. *See* ECF 85-2 at Exhibit E (47). They are also unlikely to seek the services of real estate photographers such as Mr. Lentz. ECF 83-1; *see* ECF 85-2 at ¶¶ 42-44. In the end, not only are competitors unable to compete for potential

---

[2] *See* Matthew Sag & Jake Haskell, Defense against the Dark Arts of Copyright Trolling, 103 Iowa L. Rev. 571, 574 (2018).

customers, but Plaintiff reaps income from litigation and threats of litigation that represent a diversion of commerce and revenue from an open, competitive market. *See* ECF 85-19 (*filed under seal*) and ECF 85-20 (*filed under seal*). The Fourth Circuit identifies anticompetitive uses of copyright as against public policy, and explicitly extends the defense beyond a strict antitrust context. *See* Reynolds, 911 F.2d at 978. To have an anticompetitive effect, an action "'must harm the competitive *process* and thereby harm consumers.'" Loren Data Corp. v. GXS, Inc., 501 F. App'x 275, 282 (4th Cir. 2012) (*quoting* United States v. Microsoft Corp., 253 F.3d 34, 70–71 (D.C. Cir. 2001) (*en banc*) (emphasis in original)). Plaintiff's Bait-and-Litigate scheme clearly runs afoul of the Fourth Circuit's view of public policy, harming the competitive process by which real estate agents populate their listings with images, and harming those real estate agents as consumers of images.

Plaintiff's anticompetitive conduct plainly meets the criteria of the second element he cites from the First Circuit. *See* ECF 87-1 at 20 (The Plaintiff unlawfully extends the scope of his monopoly and violates the public policies underlying copyright laws). For these reasons, the Plaintiff is not entitled to summary judgment as to Carolina One's Copyright Misuse defense.

### g.  License or Otherwise Authorized Use

"[A]n 'implied nonexclusive license' for use of an otherwise copyright protected work is created 'when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work.'" Nelson-Salabes, Inc., 284 F.3d at 514 (*quoting* I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)). Such a license can be implied by conduct. Shaver, 74 F.3d at 775 & n. 10. In the present case, the evidence shows that Plaintiff anticipated a request for the "creation" of the images at issue by entering 57 keywords

into the metadata of the images. ECF 85-22 at 4 and 13; ECF 85-26 at 2-5 and 9; *and* ECF 85-27 at 2-4, 7-8, and 15-16; *see* ECF 85-21 at 32:15 (Bates No. CarolinaOne_013205) – 33:9) (Plaintiff and his counsel have knowledge that his efforts attract real estate agents in particular). Ms. Romanosky performed an Internet search for useful images, and found Plaintiff's images. ECF 85-2 at ¶ 45. Plaintiff delivered the images to Ms. Romanosky, who requested them by her search, by making it easy to download, copy, and share the images. *Id.*; *see* ECF 85-5 at 20:8 – 21:3 and 22:21 – 23:12 *and* ECF 85-6 at 131:9 – 135:5. Finally, Plaintiff intended that persons similarly situated to Ms. Romanosky would copy and distribute his images, as he was very aware that such copying and distribution would occur since at least 2012. *See* ECF 85-12 at 4; and ECF 85-21 at 32:15 (Bates No. CarolinaOne_013205) – 33:9. Because a reasonable jury could find an implied license on that evidence, taking all reasonable inferences in favor of non-movant Carolina One, summary judgment foreclosing this defense is not possible.

In addition, the evidence presents a genuine question of material fact whether Plaintiff authorized the alleged acts, as "authorize" is meant in the context of 17 U.S.C. § 106. *See* Section II *supra*. Carolina One pled this defense as "License or Otherwise Authorized Use." ECF 20 at 6 and ¶ 32. For that additional reason, the summary judgment Plaintiff seeks on this defense should be denied.

h.  Failure to Mitigate

Failure to mitigate damages is a feature inherent in the Plaintiff's professional litigation strategy. *See* ECF 85-1 at 16-21. By employing his "Bait-and-Litigate" plan, the Plaintiff gambles that he can invite harm via copyright infringement from which he can later profit through threat of litigation and attendant settlements. Carolina One should not have to compensate the Plaintiff for the harm inherent in his "Bait-and-Litigate" tactics and which he

invites. This scheme would not work if he had employed defensive measures, such as paywalls or embedded watermarks, measures that are both known to him and also commonly used in the digital photography industry.  ECF 85-5 at 53:6 – 56:12; *see* ECF 85-1 at 19-20; ECF 85-2 at Exhibit K (72) and ECF 85-3 at Exhibit F (53).

Failure to mitigate damages precludes liability when a Plaintiff could have predicted and thus avoided copyright infringement damages. Bossalina v. Lever Bros., 849 F.2d 604 (4th Cir. 1988) (*citing* 22 Am.Jur.2d Damages § 200 (1965)); *see* Malibu Media, LLC v. Guastaferro, 2015 WL 4603065, at *5 (E.D. Va. July 28, 2015) (*collecting cases*); *accord* RooR v. Wellington Elite Trading, Inc., 2017 WL 5953291, at *3 (S.D. Fla. May 31, 2017) (*collecting cases*) ("[C]ourts have recognized a knowing failure to stop ongoing copyright infringement amounts to a failure to mitigate damages in copyright infringement cases"). Other Fourth Circuit courts have looked to a plaintiff's conduct to determine if damage awards should be precluded or limited when the defendant provides evidence demonstrating a failure to mitigate. ACL LLC, 504 F. Supp. 3d at 512; s*ee* BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc., 149 F. Supp. 3d 634, 676–77 (E.D. Va. 2015)*, aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (citation omitted).

At the time of the alleged infringement, the Plaintiff failed to mitigate damages by refusing to implement reasonable measures to prevent or dissuade alleged infringement activities he knew was likely to occur.  ECF 85-5 at 53:6 – 56:12; ECF 85-2 at Exhibit K (71-72); ECF 85-3 at Exhibit F (52-53); *see* ECF 85-1 at 19-20. He knows there is a common misconception ubiquitous to the internet which suggests that attribution is a sufficient substitute for permission. ECF 85-12 at 4; *see* ECF 85-1 at 6, 8-10, 19-20, and 22-23. He exploited this misconception by, *inter alia*, publishing his images without adequate preventative measures, and by encouraging

25

sharing both through invitation on his own website and through his own posts on a variety of social media. ECF 85-1 at 4-5, 8-11, 14-15, and 17; *see* ECF 85-25 and ECF 85-6 at 69:3-73:19. Finally, he knows that by publishing his images on third-party websites, metadata embedded in the image which otherwise includes CMI may be truncated or removed. ECF 85-16 at 10 (*Plaintiff's Response to RFA No. 86*). By generally failing to mitigate his damages, he ensures the continued viability of his "Bait-and-Litigate" tactics. *See* ECF 85-1 at 16-21.

This Court should find Failure to Mitigate a cognizable defense in this instance. The Plaintiff has pleaded both actual and statutory damages as potential remedies. ECF 1 ¶ 45. However, failure to mitigate damages would be applicable even if the Plaintiff solely elected a statutory remedy, since actual damage factor into the analysis. *See* ECF 83 at 8 (*citing* Reilly v. Com., 2016 WL 6837895 at *9 (S.D.N.Y. Oct. 31, 2016)); *see also*, Malibu Media, LLC v. Peterson, 2017 WL 1550091, at *6 (S.D. Cal. May 1, 2017) *and* Mon Cheri Bridals, LLC v. Cloudflare, Inc., 2021 WL 1222492, at *1 (N.D. Cal. Apr. 1, 2021); *contrast* Malibu Media, LLC v. Doe, 2015 WL 1402286, at *2 (D. Md. Mar. 25, 2015) (citations omitted). Damages do not lie since the Plaintiff intentionally invites and necessarily fails to mitigate harm through employment of his "Bait-and-Litigate" tactics.

## IV. Conclusion

For the foregoing reasons, Carolina One prays this Court deny Plaintiff's Motion for Partial Summary Judgment both as to direct copyright infringement and as to Carolina One's various affirmative defenses: Fair Use, Failure to State a Claim, Unclean Hands, Estoppel, Acquiescence, Copyright Misuse, License or Otherwise Authorized Use, and Failure to Mitigate. Carolina One further prays for such other relief as the Court deems appropriate.

Dated: April 22, 2022

s/ William La Salle III

William La Salle III, Esq.
Stipkala & Klosowski d/b/a Thrive IP®
100 Spinnaker Run Ln
Smithfield, VA 23430
Tel: 757.755.2257
Fax: 757.542.3095
WLaSalle@Thrive-IP.com
*Pro Hac Vice*

s/ Jeremy M. Stipkala

Jeremy M. Stipkala, Esq.
Fed. ID No. 10479
Stipkala & Klosowski d/b/a Thrive IP®
5401 Netherby Ln. Suite 1201
North Charleston, SC 29420
Tel: 843.580.9057
Fax: 866.747.2595
Jeremy.Stipkala@Thrive-IP.com

*Attorneys for Defendants*