**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| David Oppenheimer, | ) | Civil Action No. 2:19-cv-3590 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Michael C. Scarafile, Patricia R. Scarafile, | ) | **ORDER AND OPINION** |
| Sheila G. Romanosky, and O'Shaughnessy | ) | |
| Real Estate, Inc., d/b/a Carolina One Real | ) | |
| Estate | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are Defendants' motion for summary judgment (Dkt. No. 85) and Plaintiff's cross-motion for summary judgment (Dkt. No. 87). Plaintiff filed an opposition in response to Defendants' motion for summary judgment (Dkt. No. 99) to which Defendants replied (Dkt. No. 102). Defendants filed an opposition in response to Plaintiff's motion for summary judgment (Dkt. No. 94) to which Plaintiff replied (Dkt. No. 101). For the reasons below, both motions are denied in part and granted in part.

## I.    Background

Plaintiff is professional photographer whose photos are available to be licensed for a fee or purchased as prints. (Dkt. No. 1, ¶ 9). In 2013, Plaintiff took aerial photographs of the Charleston, South Carolina coastline that he later registered in a collection of photos titled "Travel, Festival, and Concert Photography by David Oppenheimer 2013" (Certificate Number VAu 1-142-190). (Dkt. No. 85-5 at 127:1-25; Dkt. No. 1, ¶ 10). This collection included the two photographs at issue in this case (the "Copyrighted Works"). (Dkt. No. 1, ¶ 20). The first Work is an aerial southern facing photograph that frames the Toler's Cove Marina in Mount Pleasant, South

1

Carolina. (Dkt. No. 1-1 at 2). The second Work is a wider aerial southern facing photograph that depicts Toler's Cove Marina, the Sullivan's Island Narrows, part of Sullivan's Island, and the coast of the Atlantic Ocean. (*Id.* at 3). Once registered with the Copyright Office, these works were available for sale or licensing through Plaintiff's website. (Dkt. No. 1, ¶ 15). The photographs on Plaintiff's website contained copyright management information ("CMI") in the form of a visible watermark and a notice of copyright embedded in the metadata. (*Id.*, ¶ 12).

Defendants offer real-estate services in the Charleston area. (*Id.*, ¶¶ 4-7). In 2016, Defendants included the Copyrighted Works in online and newspaper listings for a boat slip at Toler's Cove Marina. (Dkt. No. 85-1 at 6). The boat slip was sold in June 2017 for $85,000. (Dkt. No. 13 at 1-2).

Plaintiff discovered Defendants' use of the Copyrighted Works and, in June 2019, sent Defendants a letter demanding they cease and desist their use of the photos. (Dkt. No. 1-5). Defendants thereafter removed the listing from a database that contains all active, pending, and closed listings for real property in Charleston, but because the database is syndicated by many brokerages, Defendants were not able to remove all the listings. (Dkt. No. 13 at 11). Plaintiff acknowledged that some, but not all, uses of the Copyrighted Works were removed. (Dkt. No. 1, ¶ 16). Plaintiff filed this Complaint in December 2019. (Dkt. No. 1).

Defendants moved for summary judgment on their equitable estoppel, copyright misuse, and unclean hands defenses, for Plaintiff's copyright registration to constitute a single work, and on Plaintiff's Digital Millennium Copyright Act (DMCA) claim (Count V). (Dkt. No. 85). Plaintiff also moved for summary judgment on his direct copyright infringement claim (Count I) and 11 of Defendants' affirmative defenses. (Dkt. No. 87).

2

## II.    Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When faced with cross-motions for summary judgment, the district court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

III.     **Discussion**

  A. **Defendants' Motion for Summary Judgment (Dkt. No. 85)**

In their motion, Defendants argue that summary judgment is appropriate for their equitable estoppel and misuse of copyright defenses. Defendants also argue that Plaintiff's copyright registration should constitute a single work for purposes of statutory damages. Further, Defendants argue that Plaintiff's claims are barred under the doctrine of unclean hands for misconduct during this litigation. Finally, Defendants argue that Plaintiff's DMCA claim fails for lack of evidence.

  1. **Equitable Estoppel**

"The defense of equitable estoppel is 'a drastic remedy and must be applied sparingly.'" *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F.Supp.2d 737, 746 (D. Md. 2003) (quoting *Keane Dealer Servs., Inc. v. Harts*, 968 F.Supp. 944, 948 (S.D.N.Y. 1997)). The analysis focuses on whether the copyright owner's conduct led the alleged infringer to reasonably believe that the copyright owner did not intend to enforce their rights. *See Lowry's*, 271 F.Supp.2d at 746; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684, 134 S. Ct. 1962, 1977 (2014) (holding estoppel available when "a copyright owner engages in intentionally misleading representations concerning his abstention from suit").

"A copyright defendant invoking equitable estoppel must show that (1) the plaintiff had knowledge of the defendant's infringing acts, (2) the plaintiff either intended that the defendant rely on his acts or omissions or failed to act in such a manner that the defendant had a right to believe that it was intended to rely on the plaintiff's conduct, (3) the defendant was ignorant of the true facts, and (4) the defendant relied on the plaintiff's conduct to its detriment." *Lego A/S v. Best-Lock Const. Toys, Inc.*, 874 F.Supp.2d 75, 81 (D. Conn. 2012) (citing *Dallal v. New York Times Co.*, No. 05-2924, 2006 WL 463386, at *1 (2d Cir. Feb. 17, 2006)); *Watermark Publishers v. High Tech. Sys. Inc.*, No. 95-3839, 1997 WL 1717677, at *8 (S.D. Cal. June 18, 1997) (quoting *Hadady*

4

*Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398 (C.D. Cal. 1990)); 6 William A. Patry, Patry on Copyright § 20:58 Equitable Doctrines Invoked by Defendants—Equitable Estoppel; 4 Melville Nimmer, Nimmer on Copyright § 13.07(a) Equitable Estoppel.

Both affirmative actions and inactions can support an estoppel defense. *See Lowry's*, 271 F.Supp.2d at 747; *see also* 4 Melville Nimmer, Nimmer on Copyright § 13.07(a) Equitable Estoppel. Actions giving rise to equitable estoppel include, for example, express consent that the copyright owner does not regard the defendant's acts as infringing. *See e.g.*, *Armento v. Ashville Downtown Development Off*, No. 94-cv-0057, 1996 WL 677119, at *8 (W.D.N.C. 1996). Inaction giving rise to the defense includes holding out from suit. *See Lego A/S v. Best-Lock Const. Toys, Inc.*, 874 F.Supp.2d 75, 81-85 (D. Conn. 2012). For claims based on the plaintiff's inaction, some courts have recognized that the mere affixation of a visible copyright notice on the protected work could counter an estoppel defense. *See, e.g.*, *Id.* (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.), *cert. denied*, 364 U.S. 882, 81 S. Ct. 170 (1960)). Those courts viewed the copyright notice as a sufficient assertion of the plaintiff's right where a prudent actor would have ascertained the extent of the interest asserted by the notice. *See, e.g.*, *Hampton*, 29 F.2d at 104.

Here, Defendants offer no evidence of Plaintiff's explicit and specific intent that Defendants would not be regarded as infringers. Instead, Defendants argue that Plaintiffs conduct caused Defendants to reasonably believe that Plaintiff did not intend to assert infringement claims against them. Specifically, Defendants argue that Plaintiff induced Defendants to use the copyrighted photographs by making the photographs easy to find, download, and share online. (Dkt. No. 85-1 at 7). Defendants further argue that Plaintiff induced use of the photographs because Plaintiff, knowing that the copyright notices on the images do not deter infringement, still decided

not to employ other, more explicit warnings that use of the images could constitute copyright infringement. (*Id.* at 8-9). Plaintiff responds that making his photographs easy to find, share, and download and that deciding not to employ more explicit warnings are all part of his marketing efforts for his business as photographer and should not be considered acquiescence or an invitation to infringe. (Dkt. No. 99 at 13, 16-17). It is not undisputed that these actions indicate permission to use the Copyrighted Works.

Additionally, because the alleged conduct here does not resemble an estoppel case based on express consent, the Court considers the affixed copyright notice in its analysis. The evidence provides that copyright notices were affixed on the photographs at the time of the alleged infringement. (Dkt. No. 99-1, ¶ 5; Dkt. No. 85-1 at 17). Defendants have not effectively rebutted that evidence, nor do they dispute that the copyright information was on the face of the photographs. (*See* Dkt. No. 85-2, ¶¶ 45,50). And because this is not an express consent case, Defendants arguably should have "use[d] the means at hand to ascertain the extent of the interest asserted." *Hampton*, 279 F.2d at 104. The Court, however, does not bar the estoppel defense based on the copyright notice because the Plaintiff in this case did more than holding out from suit.

Based on these facts, the Court finds the Plaintiff's conduct insufficient to establish the equitable estoppel defense at this stage.

### 2. Copyright Misuse

The copyright misuse defense forbids the copyright holder from using the copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Lasercomb Am. Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990). The defendant must prove that the copyright holder "illegally extended his monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws."

6

*Harrington v. 360 ABQ, LLC*, 1:22-cv-00063, 2022 WL 1567094, at *3 (D.N.M.) (quoting *Malibu Media, LLC v. Miller*, No. 13-cv-02691, 2014 WL 2619558, at *4 (D. Colo. June 12, 2014)).

"Standing alone, initiating multiple copyright infringement actions and attempting to negotiate settlements does not indicate copyright misuse or copyright trolling." *Harrington*, 2022 WL 156704, at *3; *accord Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305, at *14 (S.D. Ohio Sept. 24, 2019) ("Although a large number of actions for infringement may be relevant to determination of plaintiff's status as a copyright troll, volume alone is not dispositive."); *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F.Supp.3d. 1356, 1374 (D. Kan. 2018) ("[T]he fact that [plaintiff] has filed multiple suits does not mean that it engaged in abuse of process."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd..*, 454 F.Supp.2d 966, 998 (C.D. Cal. 2006) ("A plaintiff's enforcement of its copyright does not constitute copyright misuse."); *Advanced Comput. Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 370 (E.D. Va. 1994) ("[Copyright owner's] enforcement of its copyrights does not constitute copyright misuse."). The misuse defense may exist, however, if a copyright owner is more focused on the business of litigation than selling a product or licensing their copyrights to third parties. *See Oppenheimer v. The ACL LLC*, 504 F.Supp.3d 503, 512 (W.D.N.C. 2020) (denying plaintiff's summary judgment on defendant's misuse defense because a reasonable jury could find plaintiff using copyrights to derive an income from infringement suits). The misuse defense may also exist if the copyright owner employs abusive litigation tactics to extract settlements. *See Harrington*, 2022 WL 1567094, at *3 (denying plaintiff's motion to dismiss defendant's misuse defense because defendant alleged more than the mere fact that plaintiff files or threatens to file cases to enforce his copyright, such as abusive litigation tactics and demanding settlements well in excess of the damages).

The evidence here shows that Plaintiff could be considered an excessive filer of copyright infringement suits, but the evidence also shows that Plaintiff conducts a legitimate professional photography business where he sells products and services and licenses his photographs to third parties. Both parties agree that Plaintiff's general practice is to register his photographs and then publish them on his website with copyright notices and embedded keywords that make the photographs easier to find. (Dkt. No. 85-1 at 16-21; Dkt. No. 99 at 19-23). The parties, however, disagree on why Plaintiff conducts that practice. Defendants argue that Plaintiff employs those tactics to conduct a business of copyright litigation. (Dkt. No. 102 at 6-7; *see* Dkt. No. 85-20 (indicating Plaintiff earned more than $400,000 from litigation settlements and less than $5,000 from license and print sales in 2017)). Despite the disparity in the source of his income, Plaintiff argues that these actions are part of his business practice and enables individuals and businesses to find his work to purchase or license. (Dkt. No. 99 at 20).

The Court here finds that there are genuine disputes of material facts and that the jury should decide why Plaintiff copyrights his work, whether Plaintiff is more focused on the business of litigation than licensing or selling his work, and whether Plaintiff employs abusive litigation tactics. Accordingly, the Court finds that summary judgment is not appropriate as to Defendants' misuse defense.

### 3. Number of Works Infringed for Purposes of Statutory Damages

Before final judgment, a copyright owner may elect to recover an award of statutory damages, instead of actual damages and profits, for all infringements involved in the action. 17 U.S.C. § 504(c)(1). For purposes of statutory damages, "all the parts of a compilation or derivative work constitute one work." *Id.* Compilation is defined as "a work formed by the collection and

assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* § 101.

"The question of whether a work constitutes a 'compilation' for purposes of statutory damages pursuant to Section 504(c)(1) of the Copyright Act is a mixed question of law and fact." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir.), *cert. denied*, 562 U.S. 1064, 131 S. Ct. 656 (2010). "[N]either the precise method by which the copyright holder registers his work nor the existence of separate copyrights for each constituent element of a copyrighted work is dispositive of the work's status as a 'compilation' for purposes of statutory damages." *Tattoo Art, Inc. v. TAT Intern., LLC*, 794 F.Supp.2d 634, 654 (E.D. Va. 2011). Courts instead focus on whether the copyright holder issued the work "separately, or together as a unit," *Bryant*, 603 F.3d at 141, and whether each individual work has its own value, *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993).

Plaintiff claims that Defendants infringed upon two works which were subject to a claim of copyright by his registration "Travel, Festival, and Concert Photography by David Oppenheimer 2013" (Certificate Number VAu 1-142-190). (Dkt. No. 1, ¶ 10). Plaintiff can elect to receive statutory damages for the alleged infringement and contends that it should receive an award of statutory damages for each registered image infringed upon by Defendants. (*Id.*, ¶¶ 45, 52).

Defendants argue that Plaintiff's registration constitutes a single work which would entitle Plaintiff to only one statutory damages award. (Dkt. No. 85-1 at 24). Defendants base their argument on a Copyright Office note on the face of the Certificate of Registration. (Dkt. No. 85-1 at 24-26). The note states that the work is "[r]egistered as an unpublished collection, not as a published group" and cites 37 C.F.R. 202.3(b)(4)(i)(B), which provides for the registration of an unpublished collection. (Dkt. No. 51-1 at 6-8). Defendants argue that the Copyright Office was

responding to a subtitle in Plaintiffs application that read "Group Registration of Unpublished Individual Works." (Dkt. No. 85-1 at 24). According to Defendants, this means that the Copyright Office considers the all the photographs in the registration a single work for statutory damages. But Defendants do not cite to any authority that distinguishes group registrations from unpublished collections for statutory damages. Nor do Defendants point to any facts that suggest Plaintiff issued the photographs in the registration collectively as one work or to any facts that suggest the photographs do not have independent value.

The difference between group registration and unpublished collection registration, if there is one for statutory damages purposes, would not be enough to find that the registration constitutes a single work because the method of registration is not dispositive of the work's status as a compilation. *Tattoo Art*, 794 F.Supp.2d. at 654. Moreover, the works in an unpublished collection can be considered individually for purposes of statutory damages. *See Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F.Supp.3d 898, 915 (E.D. Mo. 2015) (finding separate awards available for each of plaintiff's photographs that were part of an unpublished collection); *see also* United States Copyright Office, *Compendium of U.S. Copyright Office Practices* § 1102 Registration as a Single Work: The Unpublished Collection Option (3d ed. revised Dec. 22, 2014) (stating that the Office considers each work of an unpublished collection registered under C.F.R. 202.3(b)(4)(i)(B) to be individually registered for purposes of statutory damages unless a selection, arrangement, or coordination is claimed).

The Court reserves for the jury to answer whether Plaintiff issued the work together or separately and whether the Copyrighted Works have independent value. Accordingly, the Court denies summary judgment as to the number of works infringed for statutory damages purposes.

### 4. Unclean Hands

Unclean hands only applies where plaintiff's misconduct is directly related to the merits of the controversy between the parties. *Keystone Driller Co. v. Gen Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 147 (1933). Although historically the doctrine only applied to actions in equity, the Fourth Circuit has applied unclean hands as a defense to a copyright infringement action where the complaint sought both injunctive relief and damages at law. *See Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 n.8 (4th Cir. 1969).

In applying the defense, courts must be conscious "both of the judicial system's vital commitment to the standards of probity protected by the doctrine and, also, of the potential for misuse of this necessarily flexible doctrine by parties who would prefer to divert attention away from dry, technical, and complex merits issues toward allegations of misconduct based on relatively commonplace disputes over credibility." *Gelead Sci., Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018). "Thus, the cases in which courts apply unclean hands involve serious misconduct, such as perjury, fraud, or hiding evidence." *BASF Plant Sci., LP v. Commonwealth Sci. and Indus. Rsch. Org.*, No. 17-cv-503, 2020 WL 973751, at *13 (E.D. Va. Feb. 7, 2020), *aff'd in part, rev'd in part*, 28 F.4th 1247 (Fed. Cir. 2022). Additionally, the defense is "properly denied when the plaintiff's transgression is of an inconsequential nature." *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992) (cleaned up).

Defendants argue that Plaintiff's copyright infringement claims should be barred because Plaintiff misled Defendants and the Court by failing to include a complete Certificate of Registration in the Complaint. (Dkt. No. 85-1 at 28-29). Defendants claim that Plaintiff intentionally excluded the second page of the Certificate of Registration because the second page contained the note from the Copyright Office that said the work was registered as an unpublished

11

collection. (Dkt. No. 85-1 at 26). Defendants further argue that Plaintiff dishonestly concealed that the existence of a second page by placing a yellow sticky note over the words "Page 1 of 2" on the scanned version of Certificate of Registration attached to the Complaint. (*Id.*) Plaintiff argues that this was a "simple clerical error made in good faith" that "carrie[s] no ill-meaning." (Dkt. No. 99 at 28). Plaintiff also points to the fact that the complete Certificate of Registration was included in the cease-and-desist letter sent to Defendants in June of 2019. (*Id.* at 29). Defendants contended that Plaintiff's conduct misrepresented the scope of the copyright to the Court and to Defendants because the misrepresentation suggested that the Certificate of Registration covers the works individually when it only covers a single work. (Dkt. No. 85-1 at 28-29).

Arguably, this behavior could constitute unclean hands, but a genuine dispute of material fact exists as to the concealment of the second page of the Certificate of Registration. Additionally, the alleged transgression could be found inconsequential in this case because, as stated above *supra* III.A.3., the method of registration is not dispositive of the work's status as a compilation.

Defendants also argue that Plaintiff's DMCA claim should be barred because Plaintiff alleged DMCA violations on duplicative URLs. (Dkt. No. 85-1 at 29). In the Complaint, Plaintiff alleged 100 separate URLs displayed Defendants alleged infringement and listed those URLs in an exhibit. (Dkt. No. 1, ¶ 14; Dkt. No. 1-4). Many of the listed URLs were duplicative, and Defendant argues that the duplication is material because statutory damages under the DMCA are awarded for each violation. (Dkt. No. 85-1 at 29-30). Plaintiff admits that several of the URLs listed in the Complaint were duplicative. (Dkt. No. 99 at 32). Plaintiff claims that the duplication "is not an indication of any nefarious intent but a result of multiple different websites pulling the Works from a common source image URL" and that "he did not inflate the number of real estate websites publicly displaying one or both Copyrighted Works at issue." (*Id.*)

The Court, conscious of common place disputes over credibility, does not find that this misconduct warrants the application of the unclean hands defense at this stage. Based on these facts, the jury may or may not find that the misconduct rises to the level of false testimony or perjury. Accordingly, summary judgment on this issue is also not appropriate.

### 5. Digital Millennium Copyright Act ("DMCA")

The DMCA was enacted in 1998 to address the "perceived need of copyright owners for 'legal sanctions' to enforce various technological measures they had adopted to prevent the unauthorized reproduction of their works." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3d Cir. 2011). The DMCA makes it illegal to knowingly falsify, remove, or alter CMI from copyrighted work. 17 U.S.C. § 1202. CMI is defined as the information conveyed in connection with copies of a work, such as its title, author, copyright owner, the terms and conditions for use of the work, and identifying numbers or symbols referring to the work's copyright information. *Id.* § 1202(c). For digital images, CMI can appear on the face of the image or in the metadata of the image. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 n.5 (9th Cir. 2018).

Plaintiff here claims that Defendants removed or obscured the physical markings and metadata of the CMI on his images and then distributed the images in violation of § 1202(b). (Dkt. No. 1, ¶ 36).

§ 1202(b) provides the following:

> No person shall, without authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

> (3) distribute, import for distribution, or publicly perform works, copies of works or phonorecords, knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). This provision contains a double scienter requirement. *Mango v. Buzzfeed, Inc.*, 97 F.3d 167, 171 (2d Cir. 2020); *see also Stevens*, 899 F.3d at 674. That means that a copyright owner must show that the alleged infringer "intentionally" or "knowingly" undertook the violative action "knowing, or . . . having reasonable grounds to know," that the action "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

Here, the Defendants did not intentionally remove the facial CMI. The evidence shows that the facial CMI was present on the images acquired by Defendants. (*See* Dkt. No. 51-4; Dkt. No. 1-3, Dkt No. 99 at 35). The alleged instances of cropped facial CMI occurred after Defendants submitted its listing to a database that is syndicated by several local brokerages. (*See* Dkt. No. 1-3). Moreover, the fact that some syndicated listings display the facial CMI is additional evidence that Defendants did not remove the facial CMI. Since the cropping was done by others, or automatically, following migration from the database, Plaintiff cannot show that Defendant intentionally removed the facial CMI.

Plaintiff also cannot show that Defendants removed the metadata CMI. Like the physical cropping, the metadata CMI may have been altered or removed when the listing was syndicated to the different brokerage websites. Additionally, Plaintiff admits that his images are lawfully published in different locations which could result in an alteration or removal of metadata in some instances. (Dkt. No. 41-22 at 9). The Defendant agent who acquired the images also testified that she lacks the technical knowledge to remove or alter the metadata. (Dkt. No. 85-2, ¶¶ 13-18).

14

Plaintiff does not point to any evidence refuting that testimony. Plaintiff thus cannot show that Defendant intentional removed the metadata CMI.

Moreover, no reasonable jury could find that Plaintiff can meet the double scienter requirement. Even if Plaintiff could show that Defendants intentionally removed the CMI, Plaintiff does not have sufficient evidence that would support a jury's finding that Defendants knew or had reasonable grounds to know that such removal would induce, enable, facilitate, or conceal an infringement. The only evidence Plaintiff points to is a copyright notice on Defendants' website. (Dkt. No. 99 at 35). This evidence cannot show that Defendants knew removal of CMI will enable or facilitate infringement, especially when considering the testimony that the facial CMI influenced agent's decision to use the Copyrighted Works because it allowed her to attribute authorship. (Dkt. No. 85-2, ¶ 45(h)).

The analysis above also applies to any argument that Defendants distributed the Copyrighted Works knowing the CMI had been removed in violation of § 1202(b)(2) or (3).

Summary judgment is therefore warranted for Defendants on Plaintiff's DMCA claim.

## B. Plaintiff's Motion for Summary Judgment (Dkt. No. 87)

Plaintiff contends that there is no genuine factual dispute regarding his direct copyright infringement claim or 11 of Defendants' affirmative defenses.

### 1. Copyright Infringement

"To establish a claim for copyright infringement a plaintiff must prove [(1)] that it owned a valid copyright and [(2)] that the defendant copied the original elements of that copyright." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015). For the first element, certificate of registration constitutes prima facie evidence of ownership of a valid copyright. 17 U.S.C. § 410(c). For the second element, copying can be proven through direct

or circumstantial evidence. *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 578 (4th Cir. 2013). Direct evidence of copying includes evidence such as party admissions. *Humphreys*, 790 F.3d at 537.

For the first element, it is undisputed that Plaintiff owns a valid copyright for the works under Plaintiff's Registration VAu-1-142-190. (Dkt. No. 94 at 2). Defendants argue, however, that the Registration does not cover the images at issue because the images at issue are unregistered derivatives of images in the Registration. (*Id.*) Defendants do not provide any factual or legal support for this claim. (*Id.*) But even if Defendants properly supported this argument, it would still fail. When one compares the Registration photos with the photos published on Plaintiff's website and the photos published on Defendants' real estate listing, it is clear that the same photos are reproduced with no major deletions or alterations. (*Compare* Dkt. No. 1-2, *with* Dkt. No. 1-1, *and* Dkt. No. 1-3). The photos at issue are therefore not derivative works because a derivative work must provide a "distinguishable variation," *M. Kramer Mfg. Co., v. Andrews*, 783 F.2d 421, 438 (4th Cir. 1986). Defendants do not otherwise argue that the first element is not met. (Dkt. No. 94 at 9-12). As a result, the Court finds that the Certificate of Registration constitutes prima facie evidence that Plaintiff owns a valid copyright in the Copyrighted Works.

For the second element, Defendants admit that they acquired and subsequently published in association with a real estate listing the Copyrighted Works. (Dkt. No. 51-2 at 12; Dkt. No. 51-3 at 4; 85-2, ¶ 45). This admission constitutes direct evidence of copying and leaves no genuine dispute of material fact for the second element.

In their opposition, Defendants argue that Plaintiff's prima facie case is not met because the copying was authorized by Plaintiff's conduct. This argument is misplaced, however, because the existence of a valid license is an affirmative defense to a claim of copyright, not an element of

the prima facie case. *See Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002); *Thomas M. Gilbert Architects, P.C. v. Accent Builders and Dev., LLC*, 377 Fed. Appx. 303, 306 (4th Cir. 2010); *Spinelli v. National Football League*, 903 F.3d 185, 197 (2d Cir. 2018); *STATS, Inc. v. Anthony*, No. 11-cv-00051, 2012 WL 1970232, at *6 (W.D. Va. May 31, 2012).

Accordingly, there is no genuine issue of fact regarding Plaintiff's prima facie copyright claim. Even though there are no triable issues on Plaintiff's direct copyright infringement claim, the Court denies summary judgment in light of Defendants surviving affirmative defenses.

### 2. Affirmative Defenses

#### a. Fair Use

Congress has placed certain limitations on the exclusive rights of copyright owners, one of which is the fair use limitation. 17 U.S.C. § 107. To determine whether the use of a copyrighted work is "fair," courts consider the following factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* For factor the first factor, a commercial purpose for the use of a copyrighted work will likely weight against fair use, while a use for criticism, comment, news reporting, *et cetera* may favor fair use, depending on whether the goal of the use was to add something new to the work. *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009). As to the second factor, a use is less likely considered fair when the nature of the work is a creative product, rather than a factual work. *Id.* at 640. For the third factor, as the amount of the copyright work used

increases, so decreases the likelihood of finding the use fair. *Id.* at 642. Lastly, the fourth factor is considered the "single most element of fair use," and looks to "whether the secondary use *usurps the market of the original work.*" *Id.* at 643 (quoting *NXIVM Corp. v. The Ross Inst.*, 364 F.3d 471, 482 (2d Cir. 2004)) (emphasis in original). Ultimately, the inquiry into whether a use is "fair" must be decided on the facts of each case. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 105 S. Ct. 2218, 2230 (1985).

First, the purpose and character of Defendants' use is commercial in nature, and Defendants have not argued or presented evidence contrary to them having used the work to market their real estate listing. (Dkt. No. 1-3; Dkt. No. 94 at 13-14). Additionally, the Copyrighted Works required some artistic element and creativity to decide the perspective to take, the placement and orientation of the camera, the settings to use and the timing of the photograph. *See* United States Copyright Office, *Circular 42: Copyright Registration of Photographs* (Mar. 2021) (classifying photographs as "visual art works" and explaining why they are classified as such). Further, Defendants proceeded to copy the entirety of the Works in their real estate listing. (Dkt. No. 1-3). Nevertheless, when turning to the final factor, it seems that Plaintiff has failed to establish sufficient undisputed facts to support the effect Defendants' use had upon the potential market for or value of the Copyrighted Works. While Plaintiff argues he is a professional photographer and his income is derived from licensing his works, Defendants argue his income is derived from copyright infringement cases. Moreover, the evidence in this case shows that Plaintiff derives a large majority of his income from copyright infringement cases. Considering that evidence and the absence of facts regarding the value of the photographs or the expected profit from the photographs, the Court cannot make a determination as to the fourth factor of the fair use doctrine. Plaintiff has not established sufficient facts that the secondary use usurped the market for the

18

original work. While the Court acknowledges that these factors are to be examined as a whole and no single factor is determinative, the fourth factor is undoubtedly the most important factor. A reasonable jury could find that Defendants' use of the work had minimal effect upon the potential market for or value of the copyrighted work. The Court therefore finds that summary judgment is not appropriate.

### b.    Copyright Misuse

Plaintiff argues he is entitled to summary judgment on Defendants' copyright misuse affirmative defense. The Court found that genuine disputes of material facts exist when analyzing Defendants' motion for summary judgment on this issue. *Supra* III.A.2. This finding also applies to Plaintiff's motion. Additionally, in a separate case involving the Plaintiff here, a court in the Western District of North Carolina denied Plaintiff's motion for summary judgment on a misuse defense. *Oppenheimer*, 504 F.Supp.3d at 511-512. The court there noted "that a reasonable jury could find Plaintiff is using copyrights to derive an income from infringement suits," which is an issue of "fact that the Court should not decide." *Id.* at 512. Moreover, in that case the court noted that "there are only minimal facts alleged to support" the theory that Plaintiff uses his copyrights to derive an income from litigation. *Id.* This is in contrast with the evidence in this case that shows Plaintiff derives a large majority of his income from copyright litigation. (Dkt. No. 85-20 (showing that in 2016 and 2017 Plaintiff earned more than 85% of his income from lawsuits)). The Court therefore finds that summary judgment is not appropriate as to Defendants' misuse defense.

### c.    Unclean Hands

Plaintiff argues he is entitled to summary judgment on Defendants' unclean hands affirmative defense. The Court found that genuine disputes of material facts exist when analyzing Defendants' motion for summary judgment on this issue. *Supra* III.A.4. The Court reiterates that

19

Plaintiff's behavior could constitute unclean hands but also notes that there is a dispute about whether Plaintiff dishonestly concealed the second page of the Certificate of Registration. Accordingly, summary judgment on this issue is not appropriate.

### d. License

An implied nonexclusive license to reproduce copyrighted material may be granted orally or implied from conduct. *Nelson-Salabes*, 284 F.3d at 514. A nonexclusive license is granted where: (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee, and (3) the licensor intends that the licensee copy and distribute the work. *Id.* (adopting the three-part test set out in *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990) for determining if an implied, non-exclusive license in a copyright protected work has been granted). This test, while instructive, is not exhaustive nor dispositive. *Malibu Media, LLC v. Doe*, 381 F.Supp.3d 343, 356 (M.D. Pa. 2018); 3 Nimmer on Copyright § 10.03(a)(7). Placing the copyrighted materials on the internet does not grant an implied license to every person in the world to download and use the copyrighted work. *Malibu Media*, 381 F.Supp.3d at 356 ("We reject at the outset any suggestion that, by placing a portion of its collection on a limited number of tubesites, Malibu impliedly licensed every person in the world to download its entire collection of copyrighted materials from any source on the internet."); *see also* 3 Nimmer on Copyright § 10.03(a)(7) ("As with any other license, the terms—including identity of the licensee—should be reasonably clear."); *Comerica Bank & Trust, N.A. v. Habib*, 433 F.Supp.3d 79, 100 (D. Mass. 2020) ("[Copyright owner's] broad, alleged statement made to the general public does not set out any license terms, does not demonstrate an intent to contract with [Defendant], and indeed plainly has no relation to [Defendant].").

Here, none of the relevant facts tend to demonstrate the existence of an implied license. Defendant admits they had no communication or relationship with Plaintiff before downloading and using the Copyrighted Works. (Dkt. No. 85-2, ¶ 21). Defendants also fail to show any evidence of any statement or specific conduct by Plaintiff toward him suggesting an intent to create a licensor-licensee relationship. The Court therefore grants Plaintiff's motion for summary judgment on this defense.

### e.  Estoppel

Plaintiff argues he is entitled to summary judgment on Defendants' estoppel affirmative defense. The Court found that genuine disputes of material facts exist when analyzing Defendants' motion for summary judgment on this issue and declined to bar the defense despite the existence of a copyright notice. *Supra* III.A.2. Accordingly, summary judgment on this issue is not appropriate.

### f.  Acquiescence

In his motion for summary judgment, Plaintiff combines arguments against Defendants' acquiescence defense with arguments against Defendants' estoppel defense, stating that the Defendants theories on both defenses are identical. (Dkt. No. 101 at 11). In their opposition, Defendants address both defenses separately but designate the same facts for both defenses and fail to provide any authority suggesting acquiescence is a defense separate from estoppel in copyright cases. (Dkt. No. 94 at 20-21). The Court may act on its own and strike a redundant defense. Fed. R. Civ. P. 12(f)(1). Accordingly, Court finds Defendants' acquiescence defense redundant and strikes it from the case.

### g.  Failure to Mitigate Damages

Failure to mitigate is an equitable defense that bars recovery if the plaintiff should have avoided damages. *See Bossalina v. Lever Bros., Inc.*, 849 F.2d 604, 604 (4th Cir. 1988); *Malibu*

*Media, LLC v. Does 1*, No. 12-cv-2078, 2013 WL 1702549, at *8 (E.D. Pa. Mar. 6, 2013). A plaintiff's knowing failure to stop ongoing copyright infringement may represent a failure to mitigate. *Malibu Media, LLC v. Zumbo*, No. 13-cv-0729, 2014 WL 2742830, at *4 (M.D. Fla. Jun. 17, 2014). Allegations where the plaintiff "purposefully avoided taking sufficient steps to protect their copyrighted material because it is more profitable to allow their subscribers to distribute content and seek judgments and/or settlements from the subscribers" have defeated motions to strike a mitigation defense. *Id.*

Defendants argue that Plaintiff failed to mitigate damages by refusing to implement reasonable measures to prevent or dissuade infringement activities that Plaintiff knew was likely to occur. (Dkt. No. 94 at 25). Plaintiff argues that he does take sufficient steps to prevent unauthorized use of his work by including CMI on the face and in the metadata of his images. (Dkt. No. 101 at 14). Therefore, a genuine issue of material fact remains as to whether Plaintiff in fact failed to mitigate its damages.

### h. Statute of Limitations, Wavier, Standing, Abandonment

As to the other defenses upon which Plaintiff seeks summary judgment—statute of limitations, waiver, lack of standing, and abandonment—Defendants have not effectively disputed that Plaintiff is entitled to summary judgment. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp*, 477 U.S. at 324 ("Rule 56(e) requires the nonmoving party to . . . designate specific facts showing that there is a genuine issue for trial."). Defendants have raised these affirmative defenses without providing any supporting facts and have failed to offer any theory about why the Court should not grant summary judgment on these issues. (*See* Dkt. No. 94

at 18, 20 (addressing estoppel and acquiescence but not wavier or abandonment); *see generally* Dkt. No. 94 (failing to address statute of limitations and lack of standing); Dkt. No. 20 (failing to plead facts in relation to 13 asserted affirmative defenses)). Because Defendants failed to provide evidence or legal arguments supporting these affirmative defenses, the Court finds that Plaintiff is entitled to summary judgment as to these four affirmative defenses.

## IV.    Conclusion

For the reasons above, Defendants' motion for summary judgment (Dkt. No. 85) is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's cross-motion for summary judgment (Dkt. No. 87) is **GRANTED IN PART AND DENIED IN PART**.

Specifically, the following is **ORDERED**:

1.  Defendants' motion for summary judgment as to Plaintiff's DMCA Claim (Count V) is **GRANTED**;

2.  Defendants' motion for summary judgment as to their affirmative defenses of equitable estoppel, copyright misuse, and unclean hands is **DENIED**;

3.  Defendants' motion for summary judgment as to the number of works infringed is **DENIED;**

4.  Plaintiff's motion for summary judgment as to his Copyright Infringement Claim (Count I) is **DENIED** only so that the Court and jury can consider Defendant's surviving affirmative defenses;

5.  Plaintiff's motion for summary judgment as to Defendant's affirmative defenses of license, acquiescence, statute of limitations, waiver, lack of standing, and abandonment is **GRANTED**; and

6.  Plaintiff's motion for summary judgment as to Defendant's affirmative defenses of fair use, copyright misuse, unclean hands, estoppel, and failure to mitigate is **DENIED**.


 s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

July 12, 2022
Charleston, South Carolina