# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| David Oppenheimer, ) | Civil Action No. 2:19-cv-3590 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Michael C. Scarafile, Patricia R. Scarafile, ) | **ORDER AND OPINION** |
| Sheila G. Romanosky, and O'Shaughnessy ) | |
| Real Estate, Inc., d/b/a Carolina One Real ) | |
| Estate ) | |
| ) | |
| Defendant. ) | |

The parties were directed to brief the issue of the proper method to measure damages for the alleged copyright infringement in this case. (Dkt. No. 79). Both parties filed responses to that Order. (Dkt. Nos. 82, 83).

**I.   Background**

Plaintiff is professional photographer whose photos are available to be licensed for a fee or purchased as prints. (Dkt. No. 1, ¶ 9). Plaintiff took aerial photographs of the Charleston, South Carolina coastline that he later registered in a collection of photos titled "Travel, Festival, and Concert Photography by David Oppenheimer 2013" (Certificate Number VAu 1-142-190). (Dkt. No. 85-5 at 127:1-25; Dkt. No. 1, ¶ 10). This collection included the two photographs at issue in this case (the "Copyrighted Works"). (Dkt. No. 1, ¶ 20). The first Work is an aerial southern facing photograph that frames the Toler's Cove Marina in Mount Pleasant, South Carolina. (Dkt. No. 1-1 at 2). The second Work is a wider aerial southern facing photograph that depicts Toler's Cove Marina, the Sullivan's Island Narrows, part of Sullivan's Island, and the coast of the Atlantic Ocean. (*Id.* at 3).

Defendants offer real-estate services in the Charleston area. (*Id.*, ¶¶ 4-7). In 2016, Defendants included the Copyrighted Works in online and newspaper listings for a boat slip at Toler's Cove Marina. (Dkt. No. 85-1 at 6). For the online listings, Defendants submitted a listing that included the Copyrighted Works to the Charleston Trident Multi Listing Service (MLS). (Dkt. No. 85-2 ¶¶ 45-46). MLS listings are syndicated by and reuploaded to different brokerage websites for the Charleston area. (Dkt. No. 13 at 12). Defendant's online listing containing the Copyrighted Works therefore migrated downstream to at least 34 additional websites. (*Id.*; Dkt. No. 1, ¶¶ 14-18).

The Court directed the parties to address two questions: (1) whether there are 34 additional copyright violations for the downstream distribution of the Copyrighted Works and (2) whether the damages are calculated only based on the initial uploads by the Defendants to the MLS or if the Plaintiff is entitled to additional damages based on the downstream migration to the 34 additional sites. (Dkt. No. 79). The Court now considers the parties responses to those questions in determining the proper method to calculate statutory damages in this case.

## II.     Discussion

Under the Copyright Act, the copyright holder may elect between two measures of damages, actual damages and profits or statutory damages. 17 U.S.C § 504(a). A plaintiff who elects statutory damages is entitled to an award of between $750 and $30,000 per work infringed. *Id.* § 504(c)(1). Where the infringement was "willful," the maximum permissible award per infringed work rises to $150,000. *Id.* § 504(c)(2).

Courts interpreting § 504(c)(1) in cases involving downstream infringers have limited plaintiffs to a single statutory damages award. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265-72 (9th Cir. 2021); *Bouchat v. Champion Prods, Inc.*, 327 F. Supp. 2d 537, 546-47 (D. Md.

2003); *McClatchey v. Associated Press*, No. 05-cv-145, 2007 WL 1630261, at *3-4 (W.D. Pa. Jun. 4, 2007); *Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 579-82 (S.D.N.Y. 2013). Generally in these cases, there is one alleged primary infringer and numerous downstream users that acted derivatively from the common primary infringer. *McClatchey*, 2007 WL 1630261, at *4; *Bouchat*, 327 F. Supp. 2d at 547.

In reaching this result, the courts noted that a contrary interpretation would "lead to potentially astronomical statutory damages awards contrary to the purpose of Section 504(c)(1)." *Desire*, 986 F.3d at 1270; *accord Bouchat* 327 F. Supp. 2d at 547 (noting that separate statutory damages award for each of the downstream infringers would make plaintiff, whose actual damages are no more than $10,000, a multi-millionaire and calling such result "absurd"); *Agence Fr. Presse*, 934 F. Supp. 2d at 580 (noting that a contrary interpretation of the statutory damages provision "could lead to awards of statutory damages that are massively disproportionate when compared to the actual harm caused by the infringing defendants."). This reasoning aligns with the leading copyright treatise's contention that "a finding of liability is not a lottery ticket." 4 M. Nimmer & D. Nimmer, Copyright § 14.01[C][1] Avoiding Windfalls (2022).

Here, like in the cases cited above, there is one primary alleged infringer, the Defendants, and several downstream users that acted derivatively from the primary alleged infringer, the 34 websites where the Copyrighted Works migrated. The evidence here also suggests that Plaintiff may obtain a windfall if awarded statutory damages for each of the downstream users. Accordingly, the Court limits Plaintiff to one award of statutory damages per copyrighted work.[1]

---

[1] On a separate issue regarding compilation, the Court, in its Summary Judgment Order, reserved for the jury to answer whether the two photographs constitute a single work or two separate works. (Dkt. No. 111 at 8-10).

In their responses to the Court's order directing the parties to address this issue, the parties agree that Plaintiff's claims are limited to one count per protected work. (Dkt. No. 82 at 12, 17; Dkt No. 83 at 5). The parties, however, disagree on what factors should be considered in calculating statutory or actual damages. (*E.g.*, Dkt. No. 82 at 14; Dkt. No. 83 at 6). The Court reserves addressing those arguments during pre-trial briefing or at trial.

 s/Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 5, 2022
Charleston, South Carolina